**FILED**   SXB
9/12/2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF Illinois

EASTERN DIVISION


DAVID C. GEVAS,
     PLAINTIFF

VS.

CASE No. 16-cv-10599

HONORABLE JOHN Z. LEE


DR. SALEH OBAISI,
WEXFORD HEALTH SOURCES, INC.,
KRYSTLE MILLER,
SARAH JOHNSON,
TERRI ANDERSON,
JOHN R. BALDWIN,
CYNTHIA L. GARCIA,
MICHELLE CHRISTERSON,
VIRGINIA GARCIA,
WENDY A. DYBAS,
TIFFANY L. UTKE,
ANNA M. McBEE,
ARDAVAN SAADAT, MD
DR. SIEMIONOW,
RANDY PFISTER,
ELAINE J. GEDMAN,
DARIUS C. HOLMES,
DIANA L. MALLOY, AND

**THIRD AMENDED COMPLAINT**

**RECEIVED**
JUL 17 2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

(1.)

JOHN AND/OR JANE DOES'
UNKNOWN HEALTH CARE UNIT ADMINISTRATORS,
UNKNOWN Ill. DEPT. OF CORR. EMPLOYEES,
UNKNOWN WEXFORD HEALTH SOURCES, INC. OWNERS,
PART OWNERS, OFFICERS, EMPLOYEES AND/OR AGENTS,
UNIVERSITY OF ILLINOIS AT CHICAGO DOCTORS,
AND EMPLOYEES, AND
ALL UNKNOWN INDIVIDUALS.

COMPLAINT UNDER THE CIVIL RIGHTS ACT
TITLE 42 SECTION 1983 U.S. CODE
                  AND
28 U.S.C. SECTION 1367
MEDICAL MALPRACTICE – NEGLIGENCE


I.   PLAINTIFF:
A.  DAVID C. GEVAS
B.  B41175
C.  STATEVILLE CORR. CENTER
D.  P.O. BOX 112, JOLIET, Il. 60434


II.  DEFENDANTS:
A.  DR. SALEH OBAISI
        MEDICAL DIRECTOR
        WEXFORD HEALTH SOURCES, INC.



B. WEXFORD HEALTH SOURCES, INC.
   VENDOR UNDER CONTRACT FOR PROFIT
   STATE OF ILLINOIS

C. KRYSTLE MILLER
   DOCTOR OF OPTOMETRY
   WEXFORD HEALTH SOURCES, INC.

D. SARAH JOHNSON
   ADMINISTRATIVE REVIEW BOARD
   ILLINOIS DEPARTMENT OF CORRECTIONS

E. TERRI ANDERSON
   ADMINISTRATIVE REVIEW BOARD CHAIRPERSON
   ILLINOIS DEPARTMENT OF CORRECTIONS

F. JOHN R. BALDWIN
   DIRECTOR
   ILLINOIS DEPARTMENT OF CORRECTIONS

G. CYNTHIA L. GARCIA
   DIRECTOR OF NURSING
   WEXFORD HEALTH SOURCES, INC.

(3)

H. MICHELLE CHRISTERSON
   Correctional Nurse 2
   Illinois Department of Corrections

I. VIRGINIA GARCIA
   Registered Nurse
   Wexford Health Sources, Inc.

J. WENDY A. DYBAS
      Nurse
      Wexford Health Sources Inc.

K. TIFFANY L. UTKE
   Registered Nurse
   Wexford Health Sources, Inc.

L. ANNA M. McBEE
   Correctional Counselor / Grievance Officer
   Illinois Department of Corrections

M. ARDAVAN SAADAT, MD
   Medical Doctor
   University of Illinois at Chicago

(4)

N. DR. SIEMIONOW
MEDICAL DOCTOR
UNIVERSITY OF ILLINOIS AT CHICAGO

O. RANDY PFISTER
CHIEF ADMINISTRATIVE OFFICER / WARDEN
ILLINOIS DEPARTMENT OF CORRECTIONS

P. ELAINE J. GEDMAN
OWNER / PART OWNER / OFFICER / EMPLOYEE / AGENT
WEXFORD HEALTH SOURCES, INC.

Q DARIUS C. HOLMES
OWNER / PART OWNER / OFFICER / EMPLOYEE / AGENT
WEXFORD HEALTH SOURCES, INC.

R. DIANA L. MALLOY
OWNER / PART OWNER / OFFICER / EMPLOYEE / AGENT
WEXFORD HEALTH SOURCES, INC.

S. JOHN AND/OR JANE DOES'
UNKNOWN HEALTH CARE UNIT ADMINISTRATORS;
UNKNOWN ILL. DEPT. OF CORR. EMPLOYEES;
UNKNOWN WEXFORD HEALTH SOURCES, INC. OWNERS, PART OWNERS,
OFFICERS, EMPLOYEES AND/OR AGENTS;



(5)

UNKNOWN UNIVERSITY OF ILLINOIS
DOCTOR AND/OR EMPLOYEES; AND
ALL UNKNOWN INDIVIDUALS.

EACH DEFENDANT IS SUED INDIVIDUALLY AND IN
THIER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED
IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER
COLOR OF STATE LAW.

III   Claim One

(1)  ON OR ABOUT 4/29/14 PLAINTIFF WAS ADMITTED
TO THE UNIVERSITY OF ILLINOIS AT CHICAGO
HOSPITAL (UIC) DUE TO ATRIAL FIBRILATION WITH
RVR (A-FIB) CONCERNING HIS HEART, WHILE
IN THE UIC SURGE CENTER FOR LOWER LIP SCAR REVISION.

(2)  ON OR ABOUT 5/6/14 UIC SPECIALIST DIRECTED
DEFENDANT OBAISI AND DEFENDANT WEXFORD TO FOLLOW-UP
WITH PLAINTIFF IN 4-6 WEEKS FOR HIS A-FIB.

(3)  FROM ON OR ABOUT 5/11/14 TO ON OR ABOUT 3/30/16
DEFENDANTS OBAISI AND WEXFORD DELIBERATELY
AND CALLOUSLY, AND RECKLESSLY REFUSED TO PROVIDE
FOLLOW UP AS DIRECTED BY THE UIC SPECIALIST,

(6)

INCLUDING ADEQUATE MONITORING, AND ADEQUATE
TREATMENT FOR PLAINTIFF'S A-FIB.

(4.) FROM ON OR ABOUT 5/11/14 TO ON OR ABOUT 3/30/16
DEFENDANTS OBAISI AND WEXFORD DELIBERATELY, CALLOUSLY
AND RECKLESSLY IGNORED PLAINTIFF'S COMPLAINTS
OF CHEST PALPATATIONS, FLUTTERING, LIGHT HEADED,
NUMBNESS AND OCCASIONAL SHARP SHOOTING PAIN.

(5.) ON OR ABOUT 3/31/16 WHILE IN THE HEALTH CARE
UNIT FOR A PASS, PLAINTIFF FELT AND COMPLAINED OF
CHEST PALPATATIONS, FLUTTERING, LIGHT HEADED,
NUMBNESS AND SHOOTING PAIN AND NURSE TINA
GAVE PLAINTIFF AN EKG WHILE LOUDLY COMPLAINING
AND USING PROFANITY AT PLAINTIFF AT WHICH
TIME HE WAS FOUND TO BE IN A-FIB NOT
CONTROLLED WITH HIS PRESCRIBED MEDICATION
AS HE HAS BEEN EXPLAINING TO DEFENDANT OBAISI
SINCE ON OR ABOUT 5/11/14.

(6.) ON OR ABOUT 3/31/16 ST. JOSEPH HOSPITAL DOCTOR
DIRECTED DEFENDANT OBAISI TO ADMINISTER A CERTAIN
MEDICATION TO PLAINTIFF FOR HIS A-FIB, BUT THE
HCU WAS OUT OF STOCK. PLAINTIFF WAS AMBULANCED
TO ST. JOSEPH HOSPITAL.

(6a.)

(7) PLAINTIFF STILL HAS PALPATATIONS, FLUTTERING AND LIGHTHEADED AT TIMES.

(8) ALSO, DEFENDANTS OBAISI AND WEXFORD DELIBERATELY, CALLOUSLY AND RECKLESSLY IGNORE PLAINTIFF'S A-FIB OUT OF RETALIATION FOR FILING GRIEVANCES AND LAWSUITS.

## IV. CLAIM TWO

(9) WHILE PLAINTIFF WAS ADMITTED AT THE UIC HOSPITAL DUE TO A-FIB, ON OR ABOUT 5/2/14 A SLEEP STUDY WAS CONDUCTED AT WHICH TIME THE FINDINGS WERE CONSISTENT WITH PLAINTIFF HAS MILD NON-POSITIONAL OBSTRUCTIVE SLEEP APNEA (OSA).

(10.) ON OR ABOUT 5/6/14 DEFENDANTS OBAISI AND WEXFORD WERE DIRECTED BY THE UIC SPECIALIST TO PROVIDE PLAINTIFF'S SLEEP APNEA WITH NASAL CONTINUOUS POSITIVE AIRWAY PRESSURE. (CPAP/AUTOPAP) THERAPY OR ALTERNATIVE THERAPIES.

(11.) FROM ON OR ABOUT 5/19/2014 TO THE PRESENT AND ONGOING, PLAINTIFF HAS AND CONTINUES TO COMPLAIN THAT WHEN SLEEPING, HE STOPS BREATHING,



INABILITY TO SLEEP PROPERLY AND MORNING HEADACHES, THAT ADVERSELY AFFECT HIS DAILY ACTIVITIES AND REQUESTED ADEQUATE TREATMENT MANY TIMES, AND TO DATE AND ONGOING DEFENDANTS OBAISI AND WEXFORD DELIBERATELY, CALLOUSLY AND RECKLESSLY REFUSE TO PROVIDE THE DIRECTED TREATMENT AND DEFENDANT OBAISI TELLS PLAINTIFF THAT A CPAP IS ON ORDER, GOING ON 3 (THREE) YEARS NOW.

(12.) FROM ABOUT 4/2016 TO ABOUT 9/2016 UIC HOSPITAL PROVIDED PLAINTIFF WITH A CPAP WHILE HE WAS TREATED AT THE HOSPITAL. FURTHERMORE, ON 11/30/16 AND 4/5/16 THIS COURT SENT TWO(2) ORDERS TO DEFENDANT PFISTER TO ENSURE THAT PLAINTIFF IS RECEIVING MEDICAL CARE AS DIRECTED BY HIS OUTSIDE SPECIALISTS, BUT TO DATE AND ONGOING, DEFENDANT PFISTER TURNS A BLIND EYE, FACILITATES, APPROVES, CONDONES AND COVERS UP THE MISTREATMENT SO BUSINESS AS USUAL HAPPENS.

V. **CLAIM THREE**

(13) WHILE PLAINTIFF WAS ADMITTED AT THE UIC HOSPITAL DUE TO A-FIB, A SCAN OF PLAINTIFF'S

8

CHEST WAS CONDUCTED, ON OR ABOUT 4/29/14, AT WHICH TIME THE IMPRESSION AT #2 REVEALED SMALL PULMONARY MICRONODULE AND AT #4 A 6 CM SUBCARNIAL ENLARGED LYMPH NODE.

14. ON OR ABOUT 5/5/14 THE BRONCHOSCOPY IMPRESSION SHOWED LYMPHADENOPATHY (LEVEL 7) SIZE 3CM POR 5CM.

15. ON OR ABOUT 5/9/14 THE UIC SPECIALIST IN THE DISCHARGE SUMMARY DIRECTED DEFENDANTS OBAISI AND WEXFORD "PER FLEISCHNOR SOCIETY GUIDELINES TO FOLLOW UP CHEST CT OF 9-12 MONTHS AND 24 MONTHS SHOULD BE OBTAINED."

16. FROM ON OR ABOUT 11/9/14 TO ON OR ABOUT 3/30/16 DEFENDANTS OBAISI AND WEXFORD DELIBERATELY, CALLOUSLY AND RECKLESSLY REFUSED TO FOLLOW THE UIC SPECIALIST FOR FOLLOWUP PER FLEISCHNOR SOCIETY GUIDELINES, AS DIRECTED IN THE DISCHARGE SUMMARY, FOR CHEST CT CONCERNING PLAINTIFF'S SMALL PULMONARY NODULE.

17. IF DEFENDANTS OBAISI AND WEXFORD WOULD HAVE FOLLOWED THE UIC SPECIALIST DIRECTED FOLLOWUP

PER FLEISCHNER GUID LINES CONCERNING CHEST CT, PLAINTIFF'S CANCER WOULD HAVE BEEN DISCOVERED MUCH EARLIER AND WOULD NOT HAVE MATASTASIS INTO NUMEROUS lytic lesions THROUGHT THE SPINE, PELVIS, LEFT RIBS, AND long WITH ADDITIONAL large lytic MASS WITHIN THE RIGHT CLAVICLE CAUSING A pathological FRACTURE.

18. From SEPTEMBER 2015 THROUGH ON OR ABOUT 3/30/16 PLAINTIFF BECAME EXTREMELY AND SEVERLY ILL WITH SYMPTOMS OF DRENCHING NIGHT SWEATS, CHILLS AND SWEATS, WEIGHT loss, NAUSEA AND VOMITING, EXTREME TIREDNESS, EXTREME WEAKNESS, BONES ACHING, COULD NOT SIT UP FOR OVER 5 MINUTES, EXTREME COUGHING, WITH EXTREME AMOUNTS OF SPUTOM, SHORTNESS OF BREATH, BROKEN RIBS, BROKEN RIGHT CLAVICLE BOTH WITHOUT INJURY, EXTREME pain IN BACK, AND RIGHT HIP AREA, AND SHOULDERS, AND DEFENDANTS OBAISI AND WEXFORD DELIBERATELY, callously AND Recklessly IGNORED PLAINTIFF'S SYMPTOMS, AND RECORD PLAINTIFF'S Complaints.

19. From September 2015 THROUGH IN OR ABOUT NOVEMBER 2015, DEFENDANT OBAISI TOLD

10.

Plaintiff that he needed an emergency CT of his chest but deliberately, callously and recklessly did not submit him. Defendant Obaisi did take a sputum culture, but deliberately, callously and recklessly did not send it out. Defendant Obaisi would ask Plaintiff what medication would he want. Plaintiff responded that he did not know. Defendant Obaisi deliberately, callously and recklessly fabricated that Plaintiff's cough was getting better and deliberately, callously and recklessly refused to screen Plaintiff for cancer, even when the symptoms lead him to rule out cancer as a diagnosis and deliberately, callously and recklessly stayed an inadequate course of treatment as is the custom, pattern, and practice of Defendants Obaisi and Wexford.

20.) Between September 2015 through on or about 5/30/16 Defendant Obaisi ordered X-rays of Plaintiff's chest, shoulders, back, and lumbar spine requested by Defendants Saadat and Siemionow UIC ortho doctors and sent to Defendants Saadat and Siemionow, according to Plaintiff's medical records at Stateville.

(11.)

ACCORDING TO THE MERCK MANUAL AND UIC
ORTHO DOCTORS, INCLUDING THE UIC ORTHO
DOCTOR THAT EVALUATED PLAINTIFF'S STILL BROKEN
RIGHT CLAVICLE ON 7/7/2017, AFTER WAITING
SEVEN MONTHS, A SUBSTANTIAL DELAY, CAUSING
UNNECESSARY SEVERE PAIN AND SUFFERING, THAT
X RAYS SHOW lytic lesions THAT PLAINTIFF
HAD THROUGHT HIS SPINE, RIBS AND RIGHT
Clavicle

21. DEFENDANTS' "JANE AND/OR JOHN DOES" WHOM EVALUATES
THE X-RAYS AT STATEVILLE, SAADAT, AND
SIEMIONOW UIC ORTHO DOCTORS, AND OBAISI
DELIBERATELY, callously AND Recklessly IGNORED
THE X-RAYS OF PLAINTIFF'S CHEST, SHOULDER,
BACK AND lumBAR SPINE THAT SHOWED
NUMEROUS lytic lesions THROUGHT HIS SPINE,
RIBS, AND RIGHT CLAVICLE CAUSING THE
CANCER TO METASTASIS FURTHER AND CAUSING
SEVERE PAIN AND SUFFERING.

22. ON OR ABOUT 3/31/16 AT ST. JOSEPH Hospital
PLAINTIFF WAS GIVEN A CT DUE TO HIS A-FIB
AND INCIDENTALLY HE WAS FOUND TO HAVE CHEST
AND ABDOMINAL lymPHADENOPATHY, pulmonary

NODULES, lytic lesions in ribs, spine c/w metastatic disease and likely pathologic fracture in right clavicle.

(23.) While Plaintiff was being treated for diffused large B cell lymphoma, when at Stateville HCU, on or about 5/24/16 Defendant Obaisi deliberately, callously and recklessly refused to provide Plaintiff with a "Neulasta" injection as directed by UIC specialist which made Plaintiff suffer with longer chemo side effects, including an outpatient follow up appointment with Dr. Annie Oh UIC oncology specialist, and including necessary blood lab check. Accordingly, Dr. Annie Oh informed Plaintiff that she wanted to change Plaintiff's planned chemo regiment due to the possible dangerous consequences of not following necessary regiment.

(24.) Also, when at Stateville HCU, Plaintiff was in MS138, the sink would not drain, no hot water to wash up and shower, took about 5 months to repair, HCU and MS138 infested with roaches, and at times Plaintiff was forced to wait 2-4 hours

(13.)

TO RECEIVE HIS PRN MORPHINE CAUSING HIM TO SUFFER UNNECESSARY PAIN, AND NO HEAT IN THE HCU AND MS/38 CAUSING PLAINTIFF TO SUFFER UNNECESSARY IN CONDITIONS THAT SERIOUSLY EXACERBATED HIS CANCER SYMPTOMS AND CHEMO SIDE EFFECTS. DEFENDANTS JOHN AND/OR JANE DOES HAVE BEEN AWARE OF THE CONDITIONS IN THE HCU AND DELIBERATELY, CALLOUSLY, AND RECKLESSLY TURN A BLIND EYE TO THEM. ALSO SEE CASE NO. 17-4260.

VI. Claim Four

25. SINCE FEBRUARY 16, 2012 PLAINTIFF WAITED NUMEROUS TIMES, OVER TWO WEEKS, OVER 60 DAYS, TO RECEIVE HIS REPLACEMENT CONTACT LENSES, LEAVING PLAINTIFF TO UNNECESSARILY SUFFER WITHOUT THE ABILITY TO SEE AND READ properly CAUSING SEVERE HEADACHES, SEVERE EYE STRAIN, DIZZINESS, LOSS OF BALANCE, NAUSEA, BUMPING INTO THINGS, OTHER INMATES AND FALL/INGS, INCLUDING CAUSING FURTHER DAMAGE TO EYES, TORMENT, AND MENTAL AND EMOTIONAL ANGUISH AND DISTRESS.

26. FROM FEBRUARY 16, 2012 PROVIDING REPLACEMENT CONTACT LENSES AND EYE DOCTOR WITHOUT INTERRUPTION

HAS BECOME DEFENDANTS OBAISI AND WEXFORD INCLUDING JANE AND/OR JOHN DOES' PATTERN, PRACTICE AND CUSTOM. DEFENDANTS HAVE BEEN ON NOTICE OF THE PROBLEM SINCE JUNE 2010 AND BEING SERVED IN CASE NO. 12-1297 AND 14-134-NJR-DGW, BUT DELIBERATELY, CALLOUSLY AND RECKLESSLY REFUSED TO RESOLVE THE PROBLEM. THE REGULAR BUSINESS PRACTICE OF DEFENDANT WEXFORD IS TO MAXIMIZE PROFITS BY UNDERSTAFFING, DENYING AND DELAYING MEDICAL CARE.

(27) BETWEEN APRIL 2016 AND AUGUST 2016 PLAINTIFF WAS EXAMINED BY DEFENDANT MILLER OD AT STATEVILLE, AT WHICH TIME SHE FOUND THAT PLAINTIFF'S RIGHT EYE PRESSURE WAS EXTREMELY HIGH.

(28) DEFENDANT MILLER DELIBERATELY, CALLOUSLY, AND RECKLESSLY REFUSED TO PROVIDE TREATMENT FOR THE HIGH PRESSURE IN PLAINTIFF'S RIGHT EYE CAUSING HIM TO SUFFER UNNECESSARY, FURTHER DAMAGE TO HIS RIGHT EYE, MORE DETACHMENTS, FLOATERS, HEADACH, PAIN, TORMENT, MENTAL AND EMOTIONAL DISTRESS INCLUDING HIGHER THAN NORMAL JUMP IN CORRECTION IN HIS RIGHT EYE NEXT EYE EXAM.

15.

29. When Plaintiff files and appeals grievances of not receiving his replacement contact lenses on time, since June 2010, Defendants' Johnson, Anderson, Baldwin, McBee, Utke, and John and/or Jane Does' cover up the pattern, practice and custom and condone, facilitate, turn a blind eye including failing to intervene to correct the problem, including not enforcing the contract between the State of Illinois and Defendant Wexford and allowing business as usual for Defendant Wexford to maximize profit by understaffing, denying and delaying medical care, leaving Plaintiff to unnecessarily suffer.

30. All Defendants including all those working in concert with them will never admit to any wrongdoing no matter what type of evidence that is provided against them, or even those inadequate or hazardous things they know of, they will try to find a way to manipulate the facts, to steal state money and to do the least amount of work possible while receiving full pay checks and are

MASTER MANIPULATORS THAT DECIEVE THE PUBLIC, INMATES AND THE COURTS.

VII. _CLAIM FIVE_

(31.) FROM IN OR ABOUT JUNE 2010 TO THE PRESENT, ONGOING AND CONTINUING, PLAINTIFF'S WHICH TAKE MEDICATIONS SUCH AS NEURONTIN, TRAMADOL, DEPAKOTE; REMERON, VISTAREL, BENADRYL, MELATONIN AND OTHERS HAVE RUN OUT OF STOCK WHILE THE PRESCRIPTION IS ACTIVE. OVER 105 INSTANCES leaving PLAINTIFF TO UNNECESSARILY SUFFER WITH CHRONIC SEVERE AGONIZING PAIN, INSOMNIA, ANXIETY, TORMENT, NAUSEA, VOMITING, MUSCLE TENSION, HEADACHES, CHILLS AND SWEATS, DEPRESSION, FEELINGS OF HOPELESSNESS AND HELPLESSNESS, MENTAL AND EMOTIONAL DISTRESS INCLUDING ADVERSLY AFFECTING DAILY ACTIVITIES.

(32.) FROM IN OR ABOUT JUNE 2010 TO THE PRESENT, ONGOING AND CONTINUING, PLAINTIFF'S PRESCRIBED MEDICATIONS SUCH AS TRAMADOL, NEURONTIN, FLOMAX AND OTHERS ARE ALLOWED TO EXPIRE WITHOUT BEING ALLOWED TO SEE A DOCTOR OR SOMEONE TO REPRESCRIBE BEFORE AND/OR IMMEDIATELY AFTER THE PRESCRIPTIONS EXPIRES RESULTING IN

GAPS, NOT DISCONTINUING GRADUALLY LEAVING PLAINTIFF TO SUFFER UNNECESSARILY IN CHRONIC SEVERE AGONIZING PAIN, INSOMNIA, ANXIETY, TORMENT, NAUSEA, CHILLS AND SWEATS, VOMITING, MUSCLE JERKING, WITHDRAWL, DEPRESSION, FEELINGS OF HOPELESSNESS AND HELPLESSNESS, MENTAL AND EMOTIONAL DISTRESS, AND PROBLEMS URINATING.

(33.)    DURING THE TIME FRAME OF PLAINTIFF'S MEDICATIONS BEING OUT OF STOCK WITH AN ACTIVE PRESCRIPTION, PLAINTIFF COMPLAINED MANY TIMES TO DEFENDANTS C. GARCIA AND JOHN AND/OR JANE DOES AND THEY DELIBERATELY, CALLOUSLY AND RECKLESSLY REFUSED TO STOP AND/OR RESOLVE THE PROBLEM WHEN THEY CLEARLY HAD THE POWER AND ABILITY TO DO SO. DEFENDANTS C. GARCIA AND JOHN AND/OR JANE DOES' WOULD TURN A BLIND EYE, FACILITATE AND CONDONE, KNOWING PLAINTIFF WAS SUFFERING UNNECESSARILY WITH CHRONIC SEVERE AGONIZING PAIN, INSOMNIA, ANXIETY, TORMENT, NAUSEA, CHILLS AND SWEATING, VOMITING, MUSCLE JERKING, WITHDRAWL, DEPRESSION, FEELINGS OF HOPELESSNESS AND HELPLESSNESS, AND MENTAL AND EMOTIONAL DISTRESS.

(34) DURING THE TIME FRAMES OF MEDICATIONS
BEING OUT OF STOCK WITH ACTIVE PRESCRIPTIONS
DEFENDANTS' V. GARCIA, CHRISTERSON, UTKE,
DYBAS, AND OTHER JANE AND/OR JOHN DOE NURSES
WOULD FALSIFY MEDICAL RECORDS OF PLAINTIFF
STATING THAT HE RECEIVED HIS MEDICATIONS
WHEN HE TRULY DID NOT, INCLUDING FILLING
OUT MEDICATION ADMINISTRATION RECORD (MAR)
THAT PLAINTIFF RECEIVED HIS WATCH TAKE
MEDICATION BEFORE DISPENSING IT TO HIM.
ACCORDING TO WENDY OLSON, MED. TECH. THIS
FILLING OUT THE MAR THAT PLAINTIFF
RECEIVED HIS WATCH TAKE MEDICATION BEFORE
DISPENSING IT TO HIM IS A PATTERN, PRACTICE,
AND CUSTOM OF THOSE DEFENDANTS.

(35.) FROM IN OR ABOUT JUNE 2010 TO THE PRESENT,
ONGOING AND CONTINUING, PLAINTIFF'S PRESCRIBED
MEDICATIONS THAT HE IS ALLOWED TO HAVE
IN HIS CELL SUCH AS BLINK EYE DROPS FOR CONTACTS,
METOPROLOL, FLOMAX, MOBIC, IBUPROFEN,
MULTI-PURPOSE SOLUTION, ASPRIN AND OTHERS
ARE NOT REFILLED ON TIME RESULTING IN
GAPS, EVEN WHEN PLAINTIFF TURNED THE
REFILL STICKER IN AS DIRECTED, EVEN WHEN A

SYSTEM WAS DEVISED IN WHICH THE REFILL
STICKER IS KEPT BY THE PHARMACY TECH
AND SHE TURNED IT IN, STILL NOT REFILLED
ON TIME, LEAVING PLAINTIFF TO UNNECESSARILY
SUFFER IN CHRONIC SEVERE AGONIZING PAIN,
INSOMNIA, ANXIETY, TORMENT, NAUSEA, VOMITING,
PROBLEMS URINATING, UNABLE TO WEAR CONTACTS AND
FOR THE REQUIRED TIME IN ORDER TO SEE AND READ
INCLUDING CLEAN, DISINFECT AND STORE CONTACTS
INCLUDING MENTAL AND EMOTIONAL DISTRESS.

36. DEFENDANTS' WEXFORD AND JOHN AND/OR JANE DOES'
HAVE BEEN ON NOTICE THROUGH GRIEVANCES AND
LAWSUIT CASE No. 12-1297 OF PLAINTIFF'S WATCH
TAKE MEDICATIONS RUNNING OUT OF STOCK
WHILE PRESCRIPTION IS STILL ACTIVE, TRAMADOL,
NEURONTIN, AND OTHER MEDICATIONS ALLOWED
TO DISCONTINUE, PRESCRIPTION EXPIRE
WITHOUT BEING ALLOWED TO SEE A DOCTOR BEFORE
AND/OR IMMEDIATELY AFTER, RESULTING IN
GAPS, NOT DISCONTINUED GRADUALLY, INCLUDING
PRESCRIBED MEDICATIONS ALLOWED TO HAVE IN
CELL NOT REFILLED ON TIME WHEN THE REFILL
STICKER IS TURNED IN AS DIRECTED, INCLUDING
WHEN THE REFILL STICKER IS KEPT BY THE PHARMACY TECH.

20.

TO BE TURNED IN BY HER. DEFENDANTS WEXFORD AND JOHN AND/OR JANE DOES' DELIBERATELY, CALLOUSLY AND RECKLESSLY REFUSE TO RESOLVE, FIX THE PROBLEMS AND THIS HAS BECOME A PATTERN, PRACTICE AND CUSTOM INCLUDING TO MAXIMIZE PROFITS BY THOSE GAPS AND DELAYS.

37.) DEFENDANTS OBAISI, McBEE, UTKE, C. GARCIA, PFISTER, JOHNSON, ANDERSON, BALDWIN, AND JOHN AND/OR JANE DOES' COVER UP THE PATTERN, PRACTICE, AND CUSTOM, CONDONE AND FACILITATE, TURN A BLIND EYE AND FAIL TO INTERVENE TO RESOLVE, CORRECT THE UNCONSTITUTIONAL VIOLATIONS AS STATED THROUGHT THIS COMPLAINT, CLAIMS ONE THROUGH EIGHT (1-8). DEFENDANT WEXFORD HIRES RETIRED WARDENS, Mc CANNE, MOTE, IN ORDER TO PAY FOR PLAY IN ILLINOIS AND TO KEEP BUSINESS AS USUAL TO MAXIMIZE PROFITS BY UNDERSTAFFING, DELAY, AND DENIAL OF MEDICATIONS AND MEDICAL CARE, AND NOT ABIDE BY THEIR CONTRACT. DEFENDANTS WEXFORD AND/OR JOHN AND/OR JANE DOES' PAID DIRECTOR SNYDER TO SIGN THIER FIRST CONTRACT WITH THE STATE OF ILLINOIS.

(21)

## Claim Six

38. From about May 2010 to the present, ongoing and continuing, in accordance with the claims in this complaint and court decided facts and other facts in Case No. 12-1297, 14-0004, and 14-134-NJR-DGW, Defendant Wexford has a pattern, practice and custom of insufficient training and supervision of its employees to follow its contract with the State of Illinois, follow Ill. Dept. of Corr. (IDOC) Administrative Directives (A.D.s) and Stateville Institutional Directives (IDs) regarding medical treatment and health care. Also, the regular business practice of Defendant Wexford is to maximize profits by understaffing, delay and denial of medical treatment.

39. From about May 2010 to the present, ongoing and continuing, in accordance with the claims in this complaint and court decided facts and other facts in Case No. 12-1297, 14-0004, and 14-134-NJR-DGW, All Defendants including John and/or Jane Does' responsible for ensuring access to adequate medical care

22.

In ACCORDANCE WITH IDOC ADS AND
STATEVILLE IDS REGARDING MEDICAL
TREATMENT AND HEALTH CARE, DELIBERATELY,
Callously AND Recklessly REFUSE TO ENFORCE
THE CONTRACT BETWEEN DEFENDANT Wexford
AND THE STATE OF Illinois. Also, When All
DEFENDANTS INCLUDING John And/or Jane Does'
learn OF, KNOWS OF PLAINTIFF NOT RECEIVING
ADEQUATE MEDICAL CARE, HE OR SHE COVERS IT
Up, DOES NOT WANT TO SET OUT STAFF IN
GRIEVANCES, FACILITATE, APPROVES, CONDONE,
AND TURNS A BLIND EYE TO IT.

(40.) All DEFENDANTS INCLUDING All THOSE
In CONCERT WITH THEM WILL NEVER
ADMIT TO ANY WRONG DOING, NO MATTER
WHAT TYPE OF EVIDENCE THAT IS PROVIDED
AGAINST THEM, OR EVEN THOSE INADEQUATE
OR HAZORDOUS THINGS THEY KNOW OF, THEY
WILL Try TO FIND A WAY TO MANIPULATE
THE FACTS, TO STEAL STATE MONEY AND TO DO
THE least AMOUNT OF WORK POSSIBLE WHILE
RECEIVING Full Pay CHECKS AND ARE MASTER
MANIPULATORS THAT DECEIVE THE public, INMATES
AND THE Courts.

(23.)

41. Also, Defendants Obaisi, Wexford, C. Garcia, Christolson, V. Garcia, Dybas, Utke and Jane and/or John Does deliberately, callously, and recklessly conduct ~~themselves~~ themselves as stated in the Claims in this Complaint out of retaliation for filing grievances and lawsuits against them.

## Claim Seven

42. On or about 1/5/15 Defendant Obaisi renewed Plaintiff's Medical Permit for low gallery, low bunk, and medical restraints due to injury and severe pain in Plaintiff's left shoulder and severe pain in his left leg.

43. On three (3) different occassions Plaintiff inquired of Nurse Mac Queen regarding his copy of the on or about 1/5/15 medical permit.

44. Between 1/5/15 and 3/15/15 Nurse Mac Queen informed Plaintiff that Defendant C. Garcia tore up Plaintiff's medical permit that was



54.

Renewed By Defendant Obaisi on or about 1/5/2015 out of retaliation for filing grievances and lawsuit 14-7393.

(45.) On or about 3/4/15 Plaintiff explained to Defendant Obaisi what Nurse MacQueen told him on three different occassions and when Defendant C. Garcia came into the ER he asked Defendant C. Garcia why did she tear up his medical permit and she asked, "who told you" and he pointed to Nurse MacQueen. A few days later Defendant C. Garcia told Plaintiff she tore it up due to the lawsuit 14-7393 against her.

(46.) On or about 3/4/15 following, Defendant Obaisi condoned, facilitated and turned a blind eye to the retaliation by Defendant Garcia and would only renew, recreate another medical permit for a low bunk, just as Nurse MacQueen informed Plaintiff, out of retaliation for lawsuit 14-7393.

(47.) On or about 3/4/15 Defendant Obaisi told

(25.)

PLAINTIFF THAT HE CAN only GET A MEDICAL
PERMIT FOR A low BUNK DUE TO DEFENDANTS
JOHN AND/OR JANE DOES IDOC SPRINGFIELD
BUT HE WOULD NOT GIVE ANY NAMES OF THE
INDIVIDUAL(S) AND FUTHER EXPLAINED THAT WHEN
PLAINTIFF GOES ON A WRIT A PRESCRIBED ORDER
FOR MEDICAL RESTRAINTS WOULD BE CREATED FOR THAT
DAY OF THE WRIT. THIS EXPLANATION BY DEFENDANT
OBAISI WAS GIVEN TO PLAINTIFF ON OR ABOUT
3/4/15 BUT DID NOT HAPPEN WHEN PLAINTIFF
WENT ON WRITS.

(48.) ACCORDINGLY, DEFENDANTS OBAISI AND JOHN and/or
JANE DOES CONDONED, FACILITATED AND TURNED A
BLIND EYE TO DEFENDANT C. GARCIA'S RETALIATION
FOR GRIEVANCES AND LAWSUIT 14-7383.
DURING THE MANY WRITS PLAINTIFF WENT
ON HE WAS DELIBERATELY, CALLOUSLY, RECKLESSLY
AND OUT OF RETALIATION FORCED TO BE RESTRAINED
WITH A BLACK BOX, HANDCUFFS AND WAIST
CHAIN INSTEAD OF MEDICAL RESTRAINTS, THAT
EXACERBATED HIS INJURY TO HIS left SHOULDER
INCLUDING THE lytic lesion IN HIS RIGHT SHOULDER
AND SPINE, CAUSING SEVERE PAIN AND TORTURE
INCLUDING PAIN IN HIS left leg

(26)

(49.) Following the filing of Case No. 14-7393 this
Court would not allow Plaintiff to Amend
his Complaint and add this claim.

## Claim Eight

(50) Defendant Wexford Health Sources, Inc., (Wexford)
is under Contract with the State of Illinois to
provide medical services to IDOC inmates
such as Plaintiff. Its contract obligates
Defendant Wexford to adequately provide medical
care to IDOC inmates and Defendant Wexford
has promulgated written policies and procedures
to guide the provision of such health care.

(51.) Defendant Wexford's established custom and
practice governing the provision of care
to inmates is so prevelant as to have the
force of law.

(52) Defendant Wexford has an actual policy, procedure,
custom and practice of denying and delaying
necessary medical treatment and that policy,
procedure, custom and practice has caused Plaintiff
unnessary severe pain and unnecessary extreme
suffering as stated in this Complaint

(27.)

53. DEFENDANTS GODMAN, HOLMES, MALLOY, AND JOHN AND/OR JANE DOES (THE DEFENDANTS) ARE OWNERS, PART OWNERS, OFFICERS, EMPLOYEES, AND/OR AGENTS OF DEFENDANT WEXFORD.

54. THE DEFENDANTS ARE BEING PAID MILLIONS OF TAXPAYER DOLLARS TO OVERSEE THE HEALTH CARE OF PLAINTIFF AND OTHER INMATES DETAINED BY THE ILLINOIS DEPARTMENT OF CORRECTIONS.

55. THE DEFENDANTS ARE RESPONSIBLE FOR ESTABLISHING THE POLICIES, PROCEDURES, CUSTOM AND PRACTICES GOVERNING PLAINTIFF'S MEDICAL CARE.

56. THE SEVENTH CIRCUIT RECENTLY RECOGNIZED THAT DEFENDANT WEXFORD'S POLICY OF WITHOLDING MEDICAL CARE TO SAVE MONEY "IS A COMMON CRITICISM OF WEXFORD" LAKE V. WEXFORD HEALTH SOURCE, INC, 848 F. 3D 797, 797- 98 (7TH CIR. 2017)

57. THE LAKE DECISION IS JUST ONE OF 165 PUBLISHED DECISIONS INVOLVING DEFENDANT WEXFORD IN THE SEVENTH CIRCUIT COURTS ALONE.

58. THE DENIAL AND DELAY OF MEDICAL CARE IS DEFENDANT WEXFORD'S POLICY, PROCEDURE, CUSTOM,

28.

AND PRACTICE WHICH THE DEFENDANTS PROMULGATED AND CONDONED. THE DEFENDANTS KNEW AT THE TIME AND CURRENTLY KNOW THAT SUCH POLICIES, PROCEDURES, CUSTOM AND PRACTICES CAUSE UNNECESSARY SEVERE PAIN AND UNNECESSARY SUFFERING FROM THE DENIAL AND SUBSTANTIAL DELAY OF MEDICAL TREATMENT BUT CONTINUE TO ACT WITH DELIBERATE, CALLOUS AND RECKLESS INDIFFERENCE. THE DEFENDANTS REFUSE TO CORRECT AND/OR RESOLVE THE UNCONSTITUTIONAL VIOLATIONS DESPITE ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE HARM THAT THE POLICIES, PROCEDURES, CUSTOM AND PRACTICES ARE CAUSING INMATES SUCH AS PLAINTIFF.

59. THE DEFENDANTS HAVE ESTABLISHED AND/OR CONDONED THE POLICIES, PROCEDURES, CUSTOMS, AND PRACTICES OF DEFENDANT WEXFORD'S MEDICAL PROVIDERS IN DENYING AND/OR DELAYING PROPER MEDICAL CARE TO INMATES SUCH AS PLAINTIFF. IN DOING SO THEY TOO ACTED AND ACT UNDER COLOR OF STATE LAW.

60. THE DEFENDANTS ARE RESPONSIBLE FOR IMPLEMENTING THE POLICIES, PROCEDURES, CUSTOMS, AND PRACTICES THAT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS.

29.

61. The Defendants violate the Eighth Amendment rights in two ways. ① They establish and/or condone the policies, procedures, customs, and practices of Defendant Wexford Medical Providers in denying and substantial delaying medical care to inmates such as Plaintiff. ② The Defendants were and are deliberately, callously and recklessly indifferent by turning a blind eye to grievances, letters, lawsuits, inmates such as Plaintiff files.

62. The Defendants show a cruel and cold corporate practice at Defendant Wexford to turn a blind eye toward the very people whose well-being is in Defendant Wexford's hands.

63. The Defendants hide behind the cloak of Defendant Wexford's policy of indifference. They contend that Defendant Wexford's policy, procedure, custom and practice is to isolate them from grievances, letters, and lawsuits concerning the medical services Defendant Wexford is paid to provide.

64. With this policy, procedure, custom, and practice the Defendants try to wash          hands of the

whole AFFAIR AND NEED NOT TO CONCERN
THEMSELVES WITH THE ACTUAL QUALITY
OF HEALTH CARE THAT THEIR FOR PROFIT
COMPANY DELIVERS.

(65) WESTLAW SEARCH SHOWS 165 PUBLISHED FEDERAL
DECISIONS WITHIN THE SEVENTH CIRCUIT
COURTS IN WHICH DEFENDANT WEXFORD IS
A DEFENDANT.

(66.) THE DEFENDANTS VERY PROCEDURES, POLICIES,
CUSTOMS, AND PRACTICES ARE AT ISSUE IN THIS
CASE NOT TO MENTION THE OTHER 165 PUBLISHED
DEFENDANT WEXFORD CASES IN THE SEVENTH CIRCUIT.

(67.) DEFENDANT WEXFORD IS A SERIAL DEFENDANT
IN CASES INVOLVING INMATE CARE. ITS COLD
PRIORITIZATION OF PROFIT OVER INMATE HEALTH
HAS NOT ESCAPED THE SEVENTH CIRCUIT'S NOTICE.

IX. Legal Claims

(68.) PLAINTIFF REALLEGE AND INCORPORATE
BY REFERENCE PARAGRAPHS 1-68.

(31)

69. THE DELIBERATE, CALLOUS AND RECKLESS INDIFFERENCE TO SERIOUS MEDICAL NEEDS VIOLATED PLAINTIFF'S DAVID GEVAS' RIGHTS AND CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT AND RETALIATION UNDER THE FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

70. THE MEDICAL MALPRACTICE TO SERIOUS MEDICAL NEEDS VIOLATED PLAINTIFF'S DAVID GEVAS' RIGHTS AND CONSTITUTED MEDICAL MALPRACTICE UNDER STATE OF ILLINOIS LAW.

71. THE PLAINTIFF HAS NO PLAIN, ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE WRONGS DESCRIBED HEREIN, PLAINTIFF HAS BEEN AND WILL CONTINUE TO BE IRREPARABLY INJURED BY THE CONDUCT OF THE DEFENDANTS UNLESS THIS COURT GRANTS THE DECLARATORY AND INJUNCTIVE RELIEF WHICH PLAINTIFF SEEKS

X. RELIEF

72. A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED PLAINTIFF'S RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES.

(73.) A PRELIMINARY AND PERMANENT INJUNCTION ORDERING DEFENDANTS OBAISI AND WEXFORD AND ALL THOSE IN CONCERT WITH THEM TO SEND PLAINTIFF TO UIC CARDIOLOGIST TO DETERMINE PROPER AMOUNT OF MEDICATION FOR A-FIB, PALPATATIONS, AND FLUTTERING INCLUDING PROPER MONITORING AND FOLLOW UP TREATMENT AND ANY OTHER RELIEF THIS COURT DEEMS JUST AND PROPER.

(74.) A PRELIMINARY AND PERMANENT INJUNCTION ORDERING DEFENDANTS OBAISI AND WEXFORD AND ALL THOSE WORKING IN CONCERT WITH THEM TO PROVIDE CPAP / AUTO PAP THERAPY FOR PLAINTIFF'S SLEEP APNEA AND/OR REFERRAL TO UIC ENT FOR SURGICAL MODIFICATIONS TO THE AIRWAY AS DIRECTED IN MEDICAL RECORDS PROVIDED TO THIS COURT AND ANY OTHER RELIEF THIS COURT DEEMS JUST AND PROPER.

(75.) A PRELIMINARY AND PERMANENT INJUNCTION ORDERING DEFENDANTS OBAISI AND WEXFORD AND ALL THOSE ACTING IN CONCERT WITH THEM TO FOLLOW UIC ORTHO DIRECTION TO SEND PLAINTIFF TO UIC ONCOLOGY ORTHO IN ONE MONTH

(33.)

AS DIRECTED BY UIC ORTHO ON 7/7/17 CONCERNING
BROKEN RIGHT CLAVICLE THAT IS STILL BROKEN,
TOOK 7 MONTHS, SUBSTANTIAL DELAY TO SEE UIC
ORTHO ON 7/7/17 CAUSING UNNECESSARY SUFFERING AND
SEVERE PAIN.

76. A PRELIMINARY AND PERMANENT INJUNCTION
ORDERING DEFENDANTS OBAISE AND WEXFORD
AND ALL THOSE ACTING IN CONCERT WITH THEM,
TO SEND PLAINTIFF TO UIC UROLOGIST AS
DIRECTED BY DR. ANELEE OH IN 12/2016
CONCERNING PROBLEMS URINATING.

77. A PRELIMINARY AND PERMANENT INJUNCTION
ORDERING DEFENDANTS OBAISE AND WEXFORD
AND ALL THOSE ACTING IN CONCERT WITH
THEM TO FOLLOW DR. ANELEE OH UIC
UROLOGIST ORDER TO PROVIDE TRAMADOL SLOW
PRN AND ANY OTHER RELIEF THAT IS
JUST AND PROPER.

78. A PRELIMINARY AND PERMANENT INJUNCTION
ORDERING DEFENDANTS OBAISE AND WEXFORD
AND ALL THOSE ACTING IN CONCERT WITH
THEM TO PROVIDE PLAINTIFF WITH REPLACEMENT
CONTACT LENSES WITHOUT GAPS AND ANY OTHER


34.

RELIEF THAT IS JUST AND PROPER.

79. A PRELIMINARY AND PERMANENT INJUNCTION
ORDERING DEFENDANTS OBAISI AND WEXFORD AND
ALL THOSE ACTING IN CONCERT WITH THEM
TO REFILL PLAINTIFF'S PRESCRIBED MEDICATIONS
ON TIME TO PREVENT GAPS INCLUDING
BEING EVALUATED BY A DOCTOR BEFORE PRESCRIBED
MEDICATIONS DISCONTINUE AND ANY OTHER
RELIEF THAT IS JUST AND PROPER.

80. A PRELIMINARY AND PERMANENT INJUNCTION
ORDERING DEFENDANTS OBAISI AND WEXFORD
AND ALL THOSE ACTING IN CONCERT WITH
THEM TO RETURN PLAINTIFF TO UIC
ONCOLOGY CONCERNING HIS CANCER
AT THE TIME NEEDED. PLAINTIFF WAS
TO RETURN TO UIC ONCOLOGY DEPARTMENT
FOR HIS 3 MONTH EVALUATION AND IS
PAST 5 MONTHS AND ANY OTHER RELIEF THAT
IS JUST AND PROPER.

81. ANY OTHER INJUNCTION THAT IS JUST AND
PROPER.

82) Compensatory damages as allowed by law against each defendant, jointly and severally.

83. Punitive damages as allowed by law against each defendant.

84. A jury trial on all issues triable by jury.

85. Plaintiff's costs in this suit.

86. A transfer to Dixon Corr. Center.

87. Any additional order or relief this court deems just and proper.

Dated: 7/6/2017.

David C. Gevas, B41175
P.O. Box 112
Joliet, Il. 60434

Certification

I, David C. Gevas, certify under penalty or perjury that the foregoing is true and correct.
Executed at Joliet, Illinois on 7/6/2017.

David C. Gevas, B41175

36.

DANIED GEVAS
BH1175
P.O. Box112
Joliet, Il.
60434

IDOC INMATE
LEGAL MAIL

ZIP 60403   $003.29
02 1W
0001394677 JUL 13 2017

2017 JUL 17  PM 1: 15

CLERK
U.S. DISTRICT COURT

PRISONER CORRESPONDENCE
OFFICE OF THE CLERK
U.S. DISTRICT COURT
219 SOUTH DEARBORN ST, 20TH Floor
CHICAGO, Il. 60604


07/17/2017-45

Legal Mail