042388/19344/MHW/REN/JJL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID C. GEVAS,<br><br>        Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., et al.,<br><br>        Defendants. | Case Number 16-cv-10599<br><br>Hon. John Z. Lee, District Judge,<br><br>Hon. Sunil R. Harjani, Magistrate Judge |

## **LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

NOW COME Defendants, GHALIAH OBAISI, Independent Executor of the Estate of Saleh Obaisi, M.D., Deceased ("Dr. Obaisi"), and WEXFORD HEALTH SOURCES, INC. ("Wexford"), by and through their attorneys, Matthew H. Weller and Joseph J. Lombardo of CASSIDAY SCHADE LLP; and for their Local Rule 56.1 Statement of Undisputed Material Facts in Support of Defendants' Motions for Summary Judgment, hereby state as follows:

**Description of the Parties**

1.    Plaintiff, DAVID C. GEVAS (hereinafter referred to as the "Plaintiff" or "Mr. Gevas"), has been in the custody of the Illinois Department of Corrections ("IDOC") since 1996. (Exhibit 1 – IDOC individual in custody profile for David C. Gevas).

2.    Mr. Gevas was housed at Stateville Correctional Center ("Stateville") from 2010 to April 24, 2019. He has been incarcerated at Dixon Correctional Center from April 24, 2019 to the present. (Exhibit 2 – Deposition transcript of David C. Gevas at 13:18-14:8).

3. Defendant, WEXFORD HEALTH SOURCES, INC. ("Wexford"), is a company that provides medical services to inmates at Stateville pursuant to its contract with the IDOC. (Exhibit 3 – Plaintiff's proposed[1] Fourth Amended Complaint at ¶ 9).

4. Defendant, GHALIAH OBAISI, is the independent administrator of the Estate of former Defendant, SALEH OBAISI, M.D., deceased ("Dr. Obaisi"). Dr. Obaisi was employed by Wexford as the Medical Director of Stateville from August of 2012 until he expired on or about December 23, 2017 (Exhibit 3 at ¶ 10).

**Venue and Jurisdiction**

5. Jurisdiction and venue are proper because Plaintiff filed a federal claim under 42 U.S.C. § 1983 for an injury that allegedly occurred within the Northern District of Illinois while Plaintiff was an inmate at Stateville. (Exhibit 3 at ¶¶ 6-7).

**Factual Background**

*Medical Conditions at Issue*

6. Diffuse large B-cell lymphoma ("DLBCL") is an aggressive type of non-Hodgkin lymphoma that develops from the B-cells in the lymphatic system. DLBCL can occur at any age, but the average age of diagnosis is 60-65 years. Treatment includes chemotherapy, radiation, and stem cell transplants. DLBCL is very responsive to treatment with a large percentage of people being cured. (Exhibit 4[2] - *Leukemia Foundation: Diffuse large B-Cell Lymphoma*;

---

[1] Plaintiff was given leave to file his Fourth Amended Complaint on August 6, 2021 and explicitly instructed that "the Amended Complaint should be filed on the docket." (ECF #391). However, the Fourth Amended Complaint has not been filed yet.

[2] "A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id. citing General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)).

www.leukemia.org.au/blood-caner-information/types-of-blood-cancer/lymphoma/non-hodgkin-lymphoma/diffuse-large-b-c-lymphoma/ [last accessed August 31, 2021]).

7. Pulmonary nodules are abnormal growths of the lungs. While they are rarely cancerous, In rare circumstances these nodules are lung cancer. (Exhibit 5 – *Cleveland Clinic: Pulmonary Nodules*; www.my.clevelandclinic.org/health/diseases/14799-pulmonary-nodules/ [last accessed August 31, 2021]).

8. Atrial fibrillation is an irregular and often rapid heart rate that can increase your risk of strokes, heart failure and other heart-related complications. Treatments for atrial fibrillation may include medications and other interventions to try to alter the heart's electrical system. The heart rate in atrial fibrillation may range from 100 to 175 beats a minute. The normal range for a heart rate is 60 to 100 beats a minute. (Exhibit 6 - *Mayo Clinic Foundation: Atrial Fibrillation*; www.mayoclinic.org/diseases-conditions/atrialfibrillation/ [last accessed August 31, 2021]).

9. Obstructive sleep apnea is the most common sleep-related breathing disorder. It causes you to repeatedly stop and start breathing while you sleep. Risk factors include excess weight. Diagnosis is done either by a clinical or at home sleep apnea test. For milder cases of obstructive sleep apnea, a doctor may recommend losing weight and regular exercise. If these measures do not work, a doctor may recommend a Continuous Airway Pressure Machine. ("CPAP"). (Exhibit 7 – *Mayo Clinic Foundation: Obstructive Sleep Apnea*, www.mayoclinic.org/diseases-conditions/atrialfibrillation/ [last accessed August 31, 2021]).

*Collegial Review*

10. All non-emergency referrals for offsite care and provision of certain medical devices must be approved via the collegial review process. This occurs when the Medical Director of a correctional institution and a utilization management physician from Wexford review the

medical necessity and clinical appropriateness of a potential treatment. (Exhibit 8 – Deposition Transcript of Stephen Ritz, M.D. at 8:3-19).

*Medical Treatment Provided to Plaintiff*

11. On July 25, 2013, Plaintiff attended an otolaryngology ("ENT") evaluation at University of Illinois at Chicago Medical Center ("UIC") in connection with complaints of a painful scar on his lip. He was seen by Dr. Titambi. Dr. Titambi diagnosed the condition as right oral mucosa. He recommended a scar revision under local anesthesia. In addition, there was a recommendation for a sleep study and possible CPAP for snoring. (Exhibit 9 – Plaintiff's Medical Records at page 001).

12. On August 6, 2013, Dr. Obaisi and utilization management physician, Dr. Haymes, approved Plaintiff mucosa scar removal and sleep study at collegial review. It was noted that the sleep study should take place prior to the scar revision. (Exhibit 9 at pages 002-003).

13. On October 29, 2013, Mr. Gevas refused to undergo a sleep study that was recommended by Dr. Titambi. (Exhibit 9 at page 004).

14. On April 29, 2014, Plaintiff presented to UIC's ENT surgicenter for removal of a lower lip lesion. Upon initial examination, it was determined that Mr. Gevas was in atrial fibrillation with a pulse rate in the 140's. Plaintiff reported that he had experienced his chest fluttering and palpitations for the past 3 months but had not sought treatment for this condition. As such, Mr. Gevas was admitted to UIC hospital and given Metoprolol 5mg intravenously, as well as aspirin which improved his heart rate. (Exhibit 9 at pages 005-013).

15. On April 29, 2014, Plaintiff underwent a CT of his chest to rule out a pulmonary embolism. The CT revealed no evidence of pulmonary embolism. The positive findings of the CT included small pulmonary micronodule. The radiologist's recommendations for follow-up of this

nodule, based upon his interpretation of the "Fleishner society guidelines", was a "suggested" 6-12 month CT scan, and if stable, a CT scan at 18-24 months for low risk patients; and for high risk patients such as smokers, a "suggested" CT scan in 3 to 6 months with a follow up in 9 to 12 months if stable. The CT scan also revealed a 6cm subcarinal enlarged lymph node of "questionable significance." The recommendation was to correlate with malignancy and if necessary, follow-up with PET scan. (Exhibit 9 at pages 009-010).

16. On April 30, 2014, Plaintiff underwent an ankle branchial index that compares blood pressure in the upper and lower limbs. There were no significant findings. Other tests did not reveal any abnormalities. (Exhibit 9 at page 010).

17. On May 2, 2014, Plaintiff underwent a sleep study that revealed mild, non-positional obstructive sleep apnea. (Exhibit 9 at page 011).

18. On May 5, 2014, Plaintiff underwent a bronchoscopy which allowed a biopsy of the subcarinal lymph nodes to be taken. The results of the biopsy were "no significant adenopathy." (Exhibit 9 at page 011).

19. On May 6, 2014, Plaintiff was discharged from UIC. For his atrial fibrillation, Plaintiff was prescribed two baby aspirins and Metoprolol 100mg twice daily to control his heart rate. In addition, Plaintiff was instructed to follow a low salt, low fat, low cholesterol diet, and to increase activity as tolerated. In regard to his diagnosis of mild asymptomatic obstructive sleep apnea, it was recommended that Mr. Gevas use a CPAP, or "alternatively, you may also consider a mandibular advancement splint, referral to an ENT surgeon, weight loss, or behavioral therapy." In addition, Plaintiff was scheduled for a pulmonology evaluation on May 30, 2014. (Exhibit 9 at pages 005-006).

20. On May 6, 2014, Plaintiff returned to Stateville from UIC. A prescription order of Metoprolol 100mg and baby aspirin were entered. (Exhibit 9 at page 014).

21. On May 19, 2014, Plaintiff attended a post hospitalization evaluation with Dr. Obaisi. His pulse rate was 92, and his blood pressure was 135/86. Dr. Obaisi noted that Plaintiff was diagnosed with obstructive mild sleep apnea. Dr. Obaisi renewed various prescriptions. (Exhibit 9 at page 015).

22. On May 19, 2014, Dr. Obaisi and utilization management physician, Dr. Garcia, approved Plaintiff for CPAP at collegial review. (Exhibit 9 at page 016).

23. On May 30, 2014, Plaintiff was seen by a nurse after returning from a pulmonology evaluation at UIC. His pulse rate was 88, and his blood pressure was 128/70. The nurse documented that the pulmonologist noted the biopsy of the lymph node was benign and that Mr. Gevas was diagnosed with mild sleep apnea. The pulmonologist also recommended a sleep study and weight loss. The nurse noted that there were no new orders or medications recommended by the pulmonologist, and that Dr. Obaisi was notified. (Exhibit 9 at pages 017-019).

24. On June 6, 2014, Plaintiff attended a mental health evaluation, at which time he reported that "what really bothers me is I can't sleep because my cellie wakes me up 4-5 times per night banging shit." The mental health professional further noted that Mr. Gevas was 'heavily invested in current lawsuit…" (Exhibit 9 at page 020).

25. On January 5, 2015, Plaintiff attended a medical evaluation with Dr. Obaisi in connection with right shoulder and back pain, as well as the need for new contact lenses. His weight was 298 lbs, his pulse rate was 70, and his blood pressure was 128/68. The medical records do not document any other complaints made by Plaintiff during this appointment. (Exhibit 9 at page 021).

26. On March 18, 2015, Plaintiff presented for a medical evaluation with Dr. Obaisi in connection with complaints of pain in his right ear and hearing "dullness". Plaintiff's pulse rate was 71 and his blood pressure was 128/68. The medical records do not document any other complaints made by Plaintiff during this appointment. (Exhibit 9 at page 022).

27. On May 27, 2015, Plaintiff presented to a general medicine clinic appointment with Dr. Obaisi in connection with monitoring his prostate. He weighed 318lbs, his pulse rate was 86, and his blood pressure was 121/60. No other complaints were noted during this appointment. Dr. Obaisi renewed Plaintiff's prescription to Flomax. (Exhibit 9 at page 023).

28. On June 30, 2015, Plaintiff presented for an evaluation with dr. Obaisi regarding the status of his urology consult due to elevated PSA results. He weighed 340lbs, his heart rate was 84, and his blood pressure was 128/71. Dr. Obaisi advised him that he was approved to be sent out for the urology consultation. Plaintiff also complained of pain in his lower back radiating to his right leg. He was prescribed Motrin. (Exhibit 9 at page 024).

29. On August 22, 2015, Plaintiff presented for a medical evaluation with staff physician, Alma Martija, M.D., in connection with complaints of back pain, as well as renewal of his prescriptions and medical permits. He weighed 316lbs, his pulse rate was 84, and his blood pressure was 105/66. (Exhibit 9 at page 025).

30. On September 23, 2015, Plaintiff presented for a medical evaluation with Dr. Obaisi following his ophthalmology evaluation at UIC. His weight was 330lbs, his pulse rate was 92, and his blood pressure was 132/78. No other complaints were noted during this appointment. (Exhibit 9 at page 026).

31. On October 30, 2015, Plaintiff presented to physician's assistant, La Tanya Williams, P.A., in connection with medication renewals. His only new complaint was foot fungus.

7

His pulse rate was 84, and his blood pressure was 138/82. Ms. Williams renewed Plaintiff's medications. (Exhibit 9 at page 028).

32. On November 12, 2015, Plaintiff presented for a general medicine clinic with Dr. Martija in connection with his elevated PSA levels and an annual direct rectal examination of his prostate. His pulse rate was 77, and his blood pressure was 95/65. No other complaints were noted during this appointment. (Exhibit 9 at pages 029-030).

33. On December 1, 2015, Plaintiff presented for an orthopaedic evaluation at UIC at the direction and approval of Dr. Obaisi and Wexford. Mr. Gevas complained of lower back pain. Dr. Saadat performed an examination. He recommended that Mr. Gevas obtain a X-ray and return to his clinic. He also recommended physical therapy. (Exhibit at pages 031-032).

34. On December 9, 2015, Plaintiff attended a medical evaluation with Dr. Obaisi in connection with his recent orthopaedic consultation at UIC. He weighed 310lbs, his pulse rate was 105, and his blood pressure was 141/84. Dr. Obaisi ordered physical therapy and an X-ray of the lumbar spine. No other complaints were noted in the medical record. (Exhibit 9 at page 033).

35. On December 28, 2015, Plaintiff presented for a medical evaluation with Dr. Martija in connection with pleuritic (burning pain when breathing) chest pain and a productive cough. His pulse rate was 111 and his blood pressure was 127/71. Upon examination, Dr. Martija noted that Plaintiff's lungs were clear with no wheezing and he was afebrile (not feverish). Dr. Martija diagnosed Plaintiff's condition as a respiratory tract infection. She prescribed cough drops, antibiotics, and a multivitamin. In addition, she scheduled Plaintiff for a one-week follow-up evaluation with Dr. Obaisi. (Exhibit 9 at page 035).

36. On January 5, 2016, Plaintiff presented for an evaluation with Dr. Obaisi in connection with complaints of shortness of breath, chest pain, and coughing for the past week. His

8

pulse rate was 70, and his blood pressure was 126/78. Upon examination, Dr. Obaisi noted that the patient's lungs were clear. Dr. Obaisi diagnosed Plaintiff's condition as a cough. He ordered a chest X-ray. In addition, Dr. Obaisi increased Plaintiff's dosage of Metoprolol to 600mg twice per day and renewed his prescription to baby aspirin. (Exhibit 9 at page 036).

37. On January 8, 2016, Plaintiff underwent an X-ray of his chest at the direction and approval of Dr. Obaisi. The X-ray revealed a nondisplaced fracture of the left, seventh rib in an axillary line, but no other abnormalities. (Exhibit 9 at page 037).

38. On January 13, 2016, Plaintiff presented for a urology evaluation at UIC at the direction and approval of Dr. Obaisi and Wexford. A digital rectal examination revealed no nodules. (Exhibit 9 at pages 038-042).

39. On January 14, 2016, Plaintiff presented for an evaluation with Dr. Obaisi to discuss the results of his chest X-ray. He weighed 321lbs, his heart rate was 114, and his blood pressure was 108/71. Dr. Obaisi noted that Plaintiff was still coughing. He prescribed Tylenol #3 with Codeine, a narcotic strength pain reliever, for 10 days. (Exhibit 9 at page 043).

40. On January 25, 2016, Plaintiff presented for an evaluation with Dr. Obaisi following an outside ophthalmology appointment. His pulse rate was 89 and his blood pressure was 143/75. Plaintiff complained that he was still experiencing a cough. Upon examination, his lungs were clear. Dr. Obaisi administered intramuscular injections of a steroid and antibiotics to treat Plaintiff's cough. In addition, he scheduled Plaintiff for a follow-up evaluation in 2 weeks. (Exhibit 9 at page 044).

41. On February 3, 2016, Plaintiff attended an evaluation with Dr. Obaisi regarding his continued cough and large amount of phlegm. His pulse rate was 66, and his blood pressure was 132/86. Upon examination, Dr. Obaisi noted breathing sounds were diminished. He diagnosed

9

Plaintiff's condition as asthmatic bronchitis. He prescribed a Nebulizer treatment for five (5) days. (Exhibit 9 at page 045).

42. On February 8, 2016, Plaintiff presented for a follow-up evaluation with Dr. Obaisi for continued complaints of severe cough, phlegm, and wheezing. Dr. Obaisi diagnosed Plaintiff's condition as acute asthmatic bronchitis. He prescribed Rocephin injections for the next 3 days, prednisone for 6 days, antibiotics, and directed Mr. Gevas to continue the nebulizer treatments. Dr. Obaisi also ordered a chest X-ray. (Exhibit 9 at page 046).

43. On February 10, 2016, Plaintiff underwent an X-ray of his chest at the direction and approval of Dr. Obaisi. The X-ray revealed no abnormalities. (Exhibit 9 at page 047).

44. On February 17, 2016, Plaintiff presented for a follow-up evaluation with Dr. Obaisi. His pulse rate was 107, and his blood pressure was 113/74. Mr. Gevas reported his cough improved on Prednisone. Upon examination, his lungs were clear. Dr. Obaisi prescribed a tapering dosage of Prednisone for 24 days. (Exhibit 9 at page 048).

45. On March 7, 2016, Plaintiff attended a post medical writ evaluation with Dr. Obaisi after his ophthalmology and urology consultations. He weighed 320lbs, his pulse rate was 62, and his blood pressure was 126/77. No other complaints were noted in the medical record. (Exhibit 9 at page 049).

46. On March 21, 2016, Plaintiff attended a follow-up evaluation with Dr. Obaisi regarding his continued cough. He weighed 320lbs, his pulse rate was 93, and his blood pressure was 124/93. Dr. Obaisi assessed Plaintiff's condition as bronchitis and prescribed him Tylenol and Claritan. (Exhibit 9 at page 050).

47. On March 30, 2016, Plaintiff presented to nurse sick call with complaints of chest tightness and shortness of breath. His pulse rate was 98, and his blood pressure was 130/98. The

nursed called Dr. Obaisi and he ordered that she administer 50mg of Metoprolol immediately, as well as schedule a follow-up evaluation with him the next day. (Exhibit 9 at page 051).

48. On March 31, 2016, Plaintiff presented for an evaluation with Dr. Obaisi in connection with complaints of progressively worsening chest pain. Upon examination, Dr. Obaisi observed a rapid cardio ventral rate of 130 per minutes. His pulse rate was 115. Dr. Obaisi administered Metoprolol 50mg, Lopressor, and Nitroglycerin at the Stateville Healthcare Unit. Dr. Obaisi called St. Joseph's Medical Center to discuss the case with a physician at that facility and the determination was made to send Mr. Gevas to the emergency room via ambulance for further evaluation and treatment. (Exhibit 9 at pages 052-054).

49. On March 31, 2016, Plaintiff presented to St. Joseph's Medical Center with complaints of chest pain for 3 days. Mr. Gevas was found to be in atrial fibrillation and was given medication. He underwent a CT angiogram to rule out a pulmonary embolism. A pulmonary embolism was not detected. However, as an incidental finding, he was found to have chest and abdominal lymphadenopathy, pulmonary nodules, and lytic lesions consistent with metastatic disease. A retroperitoneal lymph node biopsy weas performed to determine if there was malignancy of the lymph nodes. (Exhibit 9 at page 057).

50. On April 6, 2016, Plaintiff was transferred from St. Joseph's Medical Center to UIC. Initially, he was treated for clavicle pain, chest pain, shortness of breath, and hematuria. (Exhibit 9 at page 057).

51. On April 11, 2016, Plaintiff underwent an ultrasound guided biopsy of the left rib mass. The pathology findings were consistent with T cell rich large B cell lymphoma. He also underwent a bone marrow biopsy which was negative for lymphoma. (Exhibit 9 at pages 058-062).

52. From April 23, 2016, Plaintiff underwent his first course of chemotherapy, which consisted of DA-EPOCH.R and IT cytabarine. It was noted that the chemotherapy was tolerated well. (Exhibit 9 at page 058).

53. Plaintiff was discharged from UIC on April 28, 2016 and admitted to the Stateville infirmary. (Exhibit 9 at pages 055-063).

54. On May 2, 2016, Dr. Obaisi conducted an evaluation of Plaintiff at the Stateville infirmary. He prescribed morphine sulfate and Tylenol #3 with Codeine. (Exhibit 9 at page 064).

55. Plaintiff was admitted to UIC on May 17, 2016; June 14, 2016; July 5, 2016; July 26, 2016, and August 18, 2016 for a total of 6 courses of chemotherapy treatment. (Exhibit 9 at pages 065-105).

56. On December 22, 2016, Plaintiff attended an oncology evaluation with Annie Oh, M.D. After reviewing Plaintiff's most recent diagnostic testing and imaging, Dr. Oh opined that Plaintiff's lymphoma was "most likely in [complete remission]." (Exhibit 9 at pages 106-112).

57. At his deposition, Mr. Gevas acknowledged that his lymphoma is in remission, and that he has not had to undergone chemotherapy since 2016. (Exhibit 2 at 130:6-13).

WHEREFORE, Defendants, GHALIAH OBAISI, Independent Executor of the Estate of Saleh Obaisi, M.D., Deceased, and WEXFORD HEALTH SOURCES, INC., respectfully request that this Court enter an Order granting their Motion for Summary Judgment, dismissing this suit with prejudice, and granting any other relief this Court deems just and appropriate.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ *Joseph J. Lombardo*
One of the Attorneys for Defendants, GHALIAH OBAISI, Independent Executor of the Estate of Saleh Obaisi, M.D., Deceased, and WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller/ARDC No. 6278685
Joseph J. Lombardo/ARDC No. 6306466
CASSIDAY SCHADE LLP
222 West Adams St., Suite 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – fax
mweller@cassiday.com
jlombardo@cassiday.com

**TABLE OF EXHIBITS TO LR. 56.1 STATEMENT
OF UNDISPUTED MATERAL FACTS**

Exhibit 1……………..……………....… IDOC individual in custody profile for David C. Gevas

Exhibit 2……………....………………………………Deposition Transcript of David C. Gevas

Exhibit 3 ……………………….…....……... Plaintiff's proposed Fourth Amended Complaint

Exhibit 4……………………….....……. *Leukemia Foundation: Diffuse large B-Cell Lymphoma*

Exhibit 5……………….…………………….……… *Cleveland Clinic: Pulmonary Nodules*

Exhibit 6...……………...………………………… *Mayo Clinic Foundation: Atrial Fibrillation*

Exhibit 7...…………………………..……..……. *Mayo Clinic Foundation: Obstructive Sleep Apnea*

Exhibit 8…………………….…………………...Deposition Transcript of Stephen Ritz, M.D.

Exhibit 9…………………………………………………….………..Relevant Medical Records

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2021, I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ *Joseph J. Lombardo*