# EXHIBIT 1

## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DAVID GEVAS,

     Plaintiff,

v.

GHALIAH OBAISI, *et al.*,

     Defendants.

16 C 10599

Hon. Judge John Z. Lee

Magistrate Judge Sunil R. Harjani

## ATTORNEY DECLARATION OF HAROLD HIRSHMAN

1.     I am one of the attorneys representing David Gevas in this matter.

2.     I have consulted and reviewed the facts of this case with a health professional who I reasonably believe: (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case.

3.     Specifically, I have consulted with a physician who is board certified in Internal Medicine and Nephrology, with expertise in the standards of care applicable to incarcerated patients concerning the conduct and decisions of Defendants Wexford Health Sources, Inc. and Dr. Saleh Obaisi regarding the care rendered to David Gevas. This physician is knowledgeable about the relevant issues raised in the complaint, and has practiced medicine for over 40 years.

4.     This physician has determined in a written report, after a review of the medical records and other relevant material involved in this particular action, that there is a reasonable and meritorious cause for the filing of such action. The written report is attached to this Affidavit.

5.     I have concluded on the basis of this physician's review and consultation that there is a reasonable and meritorious cause for filing of this action.

     I declare under penalty of perjury that the foregoing is true and correct. Executed on March 5, 2021

 

_____
Harold C. Hirshman

CERTIFICATE FOR AN ACTION IN MEDICAL MALPRACTICE

PURSUANT TO 735 ILCS 5/2-622

December 22, 2020

I, ████████████ MD, CCHP-P am a physician licensed to practice medicine in the states of ████████ ████████████████████████████████ I am board certified in Internal Medicine with expertise in the standards of care applicable to incarcerated patients. I have been in practice for over thirty years and currently work as a physician consultant reviewing adequacy of healthcare provided to inmates in jails, prisons, juvenile facilities, and Opioid Treatment Programs in correctional facilities nationwide. I am familiar with, and qualified to opine upon, the standards for diagnoses and treatment of incarcerated patients by reasonable careful primary care providers (internists and family medicine physicians) as well as specialists to whom primary care physicians refer. I am also familiar with the methods and procedures for evaluation, diagnosis, and treatments for the medical conditions at issue in this case.

I have reviewed the Complaints and medical records for the dates April 2014 through June 2016 regarding the care provided to David C. Gevas (thereinafter Plaintiff) during his incarceration. Based upon the medical records and my training and experience it is my opinion that reasonable and meritorious cause exist for the fillings of claims against named defendants Wexford Health Sources, Inc. (Wexford), medical director Dr. Salah Obasi.

On April 29, 2014, Plaintiff was incarcerated at the Stateville correctional facility when he was noted to have a very rapid heartbeat. He was admitted that day to University of Illinois at Chicago Medical Center with atrial fibrillation and a rapid ventricular response, an abnormal heart rhythm that was making his heartbeat too fast and causing symptoms of chest fluttering and palpitations. A CT (computerized axial scan) of the chest was done to rule out the presence of a pulmonary embolus (blood clot to the lung) as the cause of the abnormal and rapid heart rhythm (the atrial fibrillation). A pulmonary embolus was not detected but the CT scan of the chest showed "small pulmonary micronodules and a 6-centimeter subcarinal lymph node versus a mass". The radiologist's reading of the CT scan went on to state that "Per Fleischner society guidelines (Radiology 2005; 237:395-400), for patients at low risk for malignancy, a 6 -12-month follow-up chest CT is suggested. If stable, they should be followed up with chest CT at 18 – 24 months. For patients at high risk, such as smokers, follow-up chest CT in 3 - 5 months is suggested. If stable, a follow-up chest CT scan at 9 to 12 and 24 months should be obtained".

No follow-up CT scan was ordered even though Mr. Gevas was a former smoker and the discharge summary sent to the prison with the Plaintiff and reviewed by Dr. Obasi stated that "a follow-up CT scan of the chest in 3-6 months is suggested as patient has a history of smoking". In addition, during the last few months of 2015 through the first few months of 2016, the Plaintiff developed cough, shortness of breath, drenching night sweats, chills, and a twenty to thirty pound unintentional weight loss as well as clavicular pain but no chest X-ray or follow-up CT scan was ordered. Almost two years after the initial hospitalization at which the abnormal CT scan of the chest was noted, the Plaintiff was hospitalized again in April 2016 for chest pain. During this hospitalization, the Plaintiff was again found to have nodules in the lung but now also with diffusely enlarged lymph nodes in the chest and retroperitoneum, lytic lesions in his ribs, spine, and clavicle, and with a pathological fracture due to invasive cancer in his

right clavicle. Workup determined that these findings were due to Mr. Gevas' diffuse (throughout the body) large B cell lymphoma, a type of cancer of the blood cells and bone marrow.

Because of the inactions and actions by the defendants, individually and together, Plaintiff required toxic chemotherapy to treat a widespread cancer that seriously curtails his life expectancy to a greater degree and has left him with a legacy of pain due to the pathological fractur and lytic bone lesions in his spine and rib than if he had been treated sooner.

The defendants' failure to obtain diagnostic imaging in a timely manner and the long delay in ordering the repeat CT scan of the chest are substantial deviations from the applicable standard of care. With the delays in ordering the follow-up CT scan, the defendants appear to have been indifferent to the Plaintiff's medical condition and the consequences of delayed diagnosis and treatment. The defendants failed in their professional duties to the Plaintiff and caused the Plaintiff substantial suffering and health injury. Wexford failed in its duty as an institution to perform in accord with community standards of adequate delivery and oversight of medical services as would be provided by a reasonably managed health care organization. Wexford's failure to have appropriate measures of oversight and control to ensure and timely and appropriate health care caused Plaintiff's substantial suffering and injury to his health.

Signature