042388/19344/MHW/REN/JJL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

DAVID C. GEVAS,

               Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC., et al.,

               Defendants.

Case Number 16-cv-10599

Hon. Mary M. Rowland, District Judge

Hon. Sunil R. Harjani, Magistrate Judge

## DEFENDANTS' MOTION TO RECONSIDER DENIAL OF SUMMARY JUDGMENT, IN FULL, TO WEXFORD HEALTH SOURCES, INC. ON PLAINTIFF'S MONELL CLAIM AND INSTITUTIONAL NEGLIGENCE CLAIM

For their Motion to Reconsider the Court's denial of summary judgment, in full, to Wexford on Plaintiff's *Monell* claim and institutional negligence claim, Defendants, GHALIAH OBAISI, Independent Executor of the Estate of Saleh Obaisi, M.D., Deceased ("Dr. Obaisi"), and WEXFORD HEALTH SOURCES, INC. ("Wexford"), through their attorneys, Matthew H. Weller and Joseph J. Lombardo of CASSIDAY SCHADE LLP; state:

### Introduction

The Court should reconsider and grant Wexford summary judgment on all aspects of Plaintiff's *Monell* liability claim and his institutional negligence claim. The Court ruled that Gevas's *Monell* claim against Wexford related to patients who receive offsite services and require additional follow-ups could continue. [Dkt. # 432 at 19]. The Court based its ruling on Plaintiff's use of the 2014 monitor's report in the *Lippert* case, the Shansky Report as "notice" evidence. [Dkt. # 432 at 18]. In its ruling, this Court held that the Shansky Report discussed Stateville; discussed examples of patients who had received consultations not receiving follow ups; and that Wexford witnesses Dr. Fisher and Dr. Ritz acknowledged knowing about the Shansky Report.

[Dkt. # 432 at 18 and at n.15]. Therefore, the Court ruled, "Gevas has provided sufficient evidence in his case creating a question of fact for a jury on this *Monell* claim." [Dkt. # 432 at 18-19].

However, respectfully, the Court committed an error of law under Seventh Circuit authority. As *Dean* explained, it is not enough to show that Wexford personnel were aware of the Shansky Report's findings. You have to show notice of the Report plus notice that harm was resulting. In other words, you have to substantiate the harm discussed in *Lippert*. As the Seventh Circuit rhetorically asked in *Dean*, "[t]he 2014 report provides notice – but notice of what?") *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 238 (7th Cir. 2021).

This is a high standard to meet. It is not sufficient to just show that Wexford had notice of a problem, you have to show that Wexford had notice of an unconstitutional problem meaning notice that the problem is widespread and notice that harm was occurring because of that problem. After all, a problem that causes no harm is not a constitutional violation. At least twice in the last few years, the Seventh Circuit has actually weighed in on Wexford personnel acknowledging in depositions their awareness that follow ups were not occurring and both times found that Wexford personnel acknowledging notice of problems in deposition was not enough to defeat summary judgment.

In *Walker v. Wexford Health Sources, Inc.*, the Seventh Circuit held that "Wexford's knowledge that some referrals slipped through the cracks is not the same as Wexford's knowledge that constitutionally necessary referrals were not happening with such frequency that it ignored an obvious risk of serious harm." 940 F.3d 954, 967 (7th Cir. 2019) (citing testimony from the same Dr. Fisher cited to by this Court in this case). In *Walker,* Dr. Fisher at least acknowledged that Wexford knew that appointments slipped through the cracks. *Walker,* 940 F.3d at 967. Conversely here, all that the two witnesses this Court cited as evidence of Wexford's notice of the Shansky

Report's findings - Dr. Fisher and Dr. Ritz – conceded to was having read the Shansky Report. They never acknowledged agreement to any of the problems discussed in the Shansky Report. [Dkt. # 432 at 18-19] (*citing* Fisher Dep. (Dkt. 406-3 pp.11-12); Ritz Dep. (Dkt. 399-8, p. 106)).

In *Dean,* the Seventh Circuit held that while Wexford personnel admitted reading the *Lippert* Report nothing in the 2014 Lippert Report spoke to "the harm (if any) resulting from the reported delays," caused by Wexford's use of collegial review, "making it difficult to infer solely from the report that Wexford knew of any unconstitutional delays and consciously disregarded the risk of those consequences." *Dean*, 18 F.4th at 238.

Summarizing the post-*Dean* law, one Judge explained earlier this year that "*Dean* addressed, and soundly rejected as insufficient, the evidence that Plaintiff offers against Wexford here – his own experience and the *Lippert* Reports. That is, even if the 2014 *Lippert* Report is theoretically admissible to help show 'notice', [the inmate's] own experiences do not suffice to show that any relevant 'noticed problems' described in the 2014 *Lippert* Report 'actually existed' for purposes of the *Monell* claim. *Taylor v. Wexford Health Sources, Inc.*, No. 16-CV-3464, 2022 U.S. Dist. LEXIS 168500, * 66-67, 2022 WL 4329025 (N.D. Ill. Sept. 19, 2022) (*citing Dean,* 18 F.4th at 225).

This is exactly the same situation in this case. As evidence of a purported widespread practice, Plaintiff offers only his own experience and a section of the Shansky Report. But that section: (a) only discusses a Menard inmate (not a Stateville inmate) and (b) identifies no actual harm caused by any of these delays. If that were not dispositive, the fact remains that this was the very same section of the Shansky Report discussed in *Dean* and the Seventh Circuit held that while this section identified problems with delays, the Report never connected those delays to any harm. *Dean,* 18 F.4th at 238. Therefore, it could not infer that anyone at Wexford reading this section

would be on sufficient notice to invoke a constitutional question. Accordingly, the Court should reconsider and reverse its finding on the Wexford *Monell* claim.

As to Plaintiff's institutional negligence claim against Wexford, the Court ruled that "since one *Monell* claim against Wexford has survive, this claim survives as well." [Dkt. # 432 at 20]. Because reversal is warranted on the one surviving *Monell* claim, reversal is equally warranted on the one surviving institutional negligence claim. Plaintiff has no evidence showing that any alleged inadequate medical treatment he received resulted from anything other than individual decisions or negligence on part of Stateville medical staff.

## **Legal Standard**

Defendants recognize that a Motion to Reconsider does not exist under the Federal Rules of Civil Procedure. *Hope v. United States,* 43 F.3d 1140, 1142 n.2 (7th Cir. 1994). However, Courts routinely consider such Motions under Rule 59(e) as Motions to Alter or Amend Judgment. *Hope,* 43 F.3d at 1142. A Rule 59(e) Motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). A Rule 59(e) motion gives the District Court the opportunity to correct its own errors prior to burdening the Appellate Court. *Russell v. Delco Remy Division of General Motors Corp*., 51 F.3d 746, 749 (7th Cir.1995).

## **Argument**

### I. The Court Should Reconsider and Grant Wexford Summary Judgment on All Aspects of Plaintiff's *Monell* Liability Claim

The Court should reconsider and grant Wexford summary judgment on all aspects of Plaintiff's *Monell* liability claim. In *Dean¸* the plaintiff brought a *Monell* claim against Wexford for failure to diagnose and treat his kidney cancer. *Dean*, 18 F.4th at 221. The trial court allowed the 2014 report authored by Dr. Shansky and the 2018 report authored by Dr. Puisis, the two-court

appointed experts in the *Lippert* case, to be presented to the jury. *Id.* In order to get around the clear hearsay problems with the two reports, they were admitted as evidence that Wexford was on notice of their contents while treating the plaintiff. *Id.*

As to the 2014 Shansky Report, the Seventh Circuit cautioned that "in a case like this the *Lippert* reports pose serious dangers." *Dean*, 18 F.4th at 234. Though the Court did not explicitly rule on the admissibility of the 2014 Report, it found that even if it was admissible, it failed to prove that Wexford was deliberately indifferent. *Id.* The Seventh Circuit held that its prior cases on the subject suggest that "evidence admitted only for notice cannot establish that a municipality acted with deliberate indifference ***unless the plaintiff also has substantive proof that the 'noticed' problems actually existed.***" *Id.* at 238 (emphasis added). The Seventh Circuit further noted that the admitted excerpts of the 2014 Report said nothing about the harm (if any) resulting from the reported delays, making it difficult to infer solely from the report that Wexford knew of any unconstitutional consequences from the delays and consciously disregarded the risk of those consequences while caring for Dean. *Id.*

This Court construed Plaintiff's surviving *Monell* claim against Wexford as being a claim that Wexford maintains an unconstitutional widespread practice related to patients who receive offsite services and require follow-up. [Dkt. # 432 at 19]. When pursuing a widespread practice or policy claim under *Monell,* generally, the plaintiff must allege "more than one instance, or even three [instances.]" *Thomas v. Cook Cty. Sheriff's Dept'*, 604 F.3d 293, 303 (7th Cir. 2009).[1] In

---

[1] To be sure, there are a few exceptions to the "more than one" instance rule, but the Seventh Circuit termed those "rare" cases where the consequences of the policy are "so patently obvious." *Dean,* 18 F.4th at 236. Plaintiff makes no argument that this case is the "rare case," nor did this Court hold that this case is the "rare case," and, finally, the risk of not setting a follow up appointment does not set up "patently obvious" consequences in every instance which is necessary to make this case one of those "rare cases" exempt from the "more than one" instance rule.

*Dean,* the Seventh Circuit explained that one's own experience, alone, is not sufficient under *Monell* because "a prior pattern of similar violations puts the municipality on notice of the unconstitutional consequences of its policy, such that its continued adherence to the policy might establish the conscious disregard for the consequences of its action – the deliberate indifference – necessary to trigger municipal liability." *Dean,* 18 F.4th at 236 (cleaned up).

Here, Plaintiff has zero evidence of how other inmates were treated. So, he turns to the *Lippert* Report to fill in his evidentiary gap and provide the necessary evidence of "more than one instance" of this, alleged, Wexford widespread unconstitutional practice related to patients who receive offsite services and require additional follow-up. In other words, the "more than one" evidence is Gevas's own records plus the statements in the Shansky Report. So, we need to look at what the Shansky Report actually says about problems with follow up after offsite services and see if it provides sufficient notice under the Seventh Circuit's guideposts set forth in *Dean*.

In its Memorandum Opinion and Order this Court cited to a line in the Shansky Report that "at every facility, there were examples of patients who had received consultations or procedures but no follow up with the patient had occurred. This was quite common at some facilities, including Stateville…") [Dkt. # 432 at 18, n.15]. That quotation comes from a sub-section of the Shansky Report titled "Problems with Follow Up." *See* [Dkt. # 432 at 18, n.15] ("The Shansky Report found that 'at every facility, there were examples of patients who had received consultations or procedures but no follow up…) *with* [Dkt. # 406-10 at 32] (the Shansky Report) ("…at every facility, there were examples of patients who had received consultations or procedures but no follow up….").

This "Problems with Follow Up" sub-section only discusses only one patient's case study, and he was housed at Menard, not Stateville. *See* [Dkt. # 406-10 at 31] (the Shansky Report)

(**Problems with Follow Up**  This is a patient at Menard who…") (emphasis in original).  As noted, the Seventh Circuit held that a *Monell* plaintiff pursuing a widespread practice theory must provide evidence of "more than one instance, or even three [instances.]"  *Thomas,* 604 F.3d at 303.  So, at the outset, on a numerical level, this sub-section of the Shanksy Report still does not provide Plaintiff with enough evidence to sustain a widespread practice finding because it only discusses one other inmate.  That one Menard inmate's experience plus Plaintiff's experience is still only two instances, a number below the at least "more than three instances" standard expressed by the Seventh Circuit.  *Id*.

To be sure, this sub-section of the Shansky Report does go on to generalize that there were "examples" of patients who had consultations or procedures but no follow up at every IDOC facility and discusses an alleged "almost" universal rate of failure systemwide, but the Report provides none of those examples.  Nor does it provide the numbers at each facility, or how it determined that follow-up was not secured; or even a blanket statement that the follow-up was necessary versus elective such that someone reading this would be on notice of patently obvious consequences caused by missed follow-ups.  It is a conclusion devoid of facts, hardly a substantiation, and certainly not a statement placing someone on notice of a widespread constitutional problem.

But, even if this sub-section of the Shansky Report had provided actual descriptions of actual patient problems at Stateville related to lack of post-consultation follow ups, it still suffers a fatal defect – there is no evidence linking any of these delays to any claimed harm.  The Shansky Report's entire "Problems with Follow Up" sub-section cited by this Court as the basis for denying summary judgment is just two paragraphs long.  [Dkt. # 406-10 at 32] (the Shansky Report).  On

its face, this sub-section never identifies any harm caused by any purported lack of post-consultation follow-up. [*Id.*]

Even as to the Menard inmate discussed in this sub-section (the only inmate actually discussed in this entire sub-section), Shansky just identified that a prostate biopsy had not been set, but he said nothing about any harm caused by that biopsy's delay. [*Id.*] Nor is the consequence of that delay so "patently obvious" that someone reading this would be on notice of harm. After all, if the biopsy was negative for prostate cancer, there would be no harm caused by a delay in receiving that biopsy. So, no one reading the sub-section of the Shansky Report cited in the Court's memorandum opinion would be on notice of any harm caused by this vaguely identified "widespread" practice of not setting post consultation follow up because Shansky never identified any harm.[2]

Nor does the Shansky Report's appendix section discuss actual harm. [Dkt. # 406-10 at 71-72]. Putting aside the question of whether a case study of only six inmates at Stateville, a prison housing over 1,000 inmates, is evidence of a widespread practice at that prison, there is no discussion of any harm caused by any of the "missed follow ups," discussed in that appendix either. [*Id.*].[3]

---

[2] There is another sub-section immediately above the "Problems with Follow Up" sub-section cited by this Court as creating a question of fact. It is titled "Delays in Following Up an Abnormal Result." [Dkt. # 406-10 at 30] (the Shanksy Report). While it was not cited by this Court, for completeness of the argument, Defendants will briefly explain why it too cannot show sufficient notice. One, it discusses an occurrence at Hill Correctional, not Stateville. [*Id.*] Two, this sub-section expressly states that the lack of follow up caused no harm. [*Id.*] ("We finally obtained the CT results…this patient is fortunate that despite the absence of follow-up his health is probably not in jeopardy.") Therefore, anyone reading this would not be on notice of harm caused by this alleged "widespread practice," because Shansky conceded that the delay caused no harm.

[3] As of December 16, 2022, Stateville's current census is 1,031 inmates. *See* Stateville Correctional Center, available at: https://idoc.illinois.gov/facilities/allfacilities/facility.stateville-correctional-center.html (last accessed Dec. 16, 2022).

Ultimately, at day's end, we do not have to wonder if this section of the Shansky Report shows evidence of harm because the Seventh Circuit already told us *Dean* that this section shows no evidence of harm that cannot serve as a basis to keep Wexford in a case. As noted, "Problems with Follow Up" is not a distinct section of the Shansky Report, it is a sub-section. We know that it is a sub-section because "Problems with Follow Up" is not listed as a section of the Report on the Shansky Report's table of contents. *See* [Dkt. # 406-10 at 3] (Shansky Report table of contents listing "Scheduled Offsite Services" as a section while not listing "Problems with Follow Up" as a section). Rather, "Problems with Follow Up" is actually just a two paragraph long sub-section of a larger section of the Shansky Report called, "Scheduled Offsite Services." *See* [*Id.*].

Here is why any of this matters: "Scheduled Offsite Services (Consultations and Procedures)" is the Shansky Report section that the Seventh Circuit considered and addressed in *Dean*. *Compare Dean,* 18 F.4th at 225 ("Relevant here, Dr. Shansky found 'breakdowns in almost every area' of collegial review, 'starting with delays in identification of the need for offsite services…'" *with* [Dkt. # 406-10 at 30] (the Shansky Report, Scheduled Offsite Services section) ("[W]e found breakdowns in almost every area, starting with delays in identification of the need for offsite services….").

In *Dean,* the Seventh Circuit held that "the admitted excerpts of the [Shansky] report said nothing about the harm (if any) resulting from the reported delays, making it difficult to infer solely from the report that Wexford knew of any unconstitutional consequences from the delays and consciously disregarded the risk of those consequences while caring for Dean." *Dean,* 18 F.4th at 238. Therefore, even if the "Problems with Follow Up" sub-section had discussed a Stateville patient (which it did not), it still cannot provide Wexford with the required notice creating a question of fact because the Seventh Circuit already held that this section of the Shansky Report

said nothing about any harm resulting from the reported delays, and provided no basis for keeping Wexford in the case.

In fact, already this year, one N.D. Ill. Judge reconsidered, reversed, and dismissed Wexford on substantially the same argument set forth here – the Shansky Report identified problems, but no harm caused by those problems, foreclosing the inference that Wexford knew of unconstitutional consequences solely from reading the Shansky Report. In *Ryburn v. Obaisi,* the Court reconsidered, reviewed *Dean* and the same "Scheduled Offsite Services" section of the Shansky report at issue in this case, plus even reviewed the Shansky Report's Stateville-specific appendix, and concluded that "…as was true in *Dean* – nothing in the 2014 Lippert Report speaks to the harm (if any) resulting from the reported delays." *Ryburn v. Obaisi*, No. 14-CV-4308, 2022 U.S. Dist. LEXIS 82380, * 24, 2022 WL 1444309 (N.D. Ill. May 6, 2022).

The section of the Shansky Report that this Court held created a question of fact on *Monell* cannot serve as a basis for keeping Wexford in the case on the "notice" theory that Plaintiff advances. This is not counsel's opinion or argument; it is the Seventh Circuit's holding and the holding of at least one other Court. This section identified no harm and Shansky's failure to identify any harm foreclosed any question that someone at Wexford reading this section had actual or inferred notice of widespread problems at a constitutional-level. Accordingly, this Court's ruling is at odds with the Seventh Circuit's holding. That is a basis for reversal.

Therefore, respectfully, the Court erred in finding that a question of fact exists on Plaintiff's *Monell* claim that Wexford maintains an unconstitutional widespread practice related to patients who receive offsite services and require additional follow-up. Plaintiff offers no substantive evidence of any other inmate's experience. In order to fill in his evidentiary failing, he relies on a section of the Shansky Report. But that section discusses no Stateville inmate, identifies no harm

caused by this purported "universal finding," and even if it had, the Seventh Circuit already ruled that this very section of the report said nothing about any harm resulting from these purported delays. Absent that information, the Shansky Report does not provide sufficient notice to create a question of fact on *Monell*. Therefore, the Court should reconsider and find that Wexford is entitled to summary judgment on all aspects of Plaintiff's *Monell* claim.

## II.     The Court Should Reconsider and Grant Wexford Summary Judgment on Plaintiff's Punitive Damages Claim

Next, the Court should also reconsider and grant Wexford summary judgment on Plaintiff's punitive damages claim against Wexford. In its memorandum opinion and order, the Court held that because one *Monell* claim survived against Wexford, the Court would not dismiss Plaintiff's punitive damages claim against Wexford. [Dkt. # 432 at 21].[4] As set forth above, the Court should reconsider and grant Wexford summary judgment on all aspects of Plaintiff's *Monell* claim. With no pending *Monell* claim, no basis would exist for imposing punitive damages.

## III.    The Court Should Reconsider and Grant Wexford Summary Judgment on Plaintiff's Institutional Negligence Claim

Finally, the Court should also reconsider and grant Wexford summary judgment on Plaintiff's Institutional Negligence claim. In its memorandum opinion and order, the Court noted that Defendants set forth the same argument on Plaintiff's *Monell* claim and his institutional negligence claim. [Dkt. # 432 at 20]. The Court then held that because "one *Monell* claim against Wexford has survived, this [institutional negligence] claim survives as well." [Dkt. # 432 at 20]. As discussed above reconsideration is warranted as to the sole remaining *Monell* theory against Wexford; therefore, reconsideration is also warranted on Plaintiff's institutional negligence claim against Wexford.

---

[4] Gevas conceded that punitive damages are not recoverable against the other Defendant, the Obaisi estate. [Dkt. # 432 at 21].

The Court's memorandum opinion and order did not discuss the Illinois case law on institutional liability in the medical context. Liability is predicated on the hospital's own negligence not the physician's negligence vicariously imputed to the hospital. *See Longnecker v. Loyola Univ. Med. Ctr.* 383 Ill. App. 3d 874, 885, 891 N.E.2d 954, 963 (Ill. App. Ct. 2008)*; see also Groeller v. Evergreen Healthcare Ctr., LLC,* 2015 IL App (1st) 140932, ¶ 21, 31 N.E.2d 869, 876 (Ill. App. Ct. 2015). The hospital is judged against what a reasonably careful hospital would do under the same circumstances. *Longnecker,* 383 Ill. App. 3d at 885, 891 N.E.2d at 963 (*citing* Ill. P. J. I., Civ. No. 105.03.01 (1995)). Illinois' Supreme Court held that this duty is "administrative or managerial in character." *Advincula v. United Blood Servs.*, 176 Ill.2d 1, 28, 678 N.E.2d 1009, 1023 (Ill. 1996).

Plaintiff's institutional negligence claim against Wexford fails for the reason that his *Monell* claim fails – he lacks evidence that Wexford failed on an administrative or managerial level. As noted above, Plaintiff only offers evidence of his own treatment and the Shansky Report. While that Report discusses alleged problems at Stateville, it never discusses any harm caused by those problems per the Seventh Circuit. *See* [Dkt. # 406-10 at 32; 71-72]; *see also Dean,* 18 F.4th at 238. Because harm/damages are an essential tort element, the absence of a harm discussion means that the Report cannot provide evidence of managerial or administrative negligence by Wexford. Worded simply, Plaintiff lacks evidence on the essential element of his institutional negligence claim - that Wexford, not just his doctor, failed on an administrative or managerial level. Accordingly, as with Plaintiff's sole remaining *Monell* theory, the Court should reconsider and grant Wexford summary judgment on Plaintiff's institutional negligence claim against Wexford.

**Conclusion**

WHEREFORE, Defendants, GHALIAH OBAISI, Independent Executor of the Estate of Saleh Obaisi, M.D., Deceased ("Dr. Obaisi"), and WEXFORD HEALTH SOURCES, INC. ("Wexford"), request that this Honorable Court reconsider, grant Wexford summary judgment on all aspects of Plaintiff's *Monell* claim and his institutional negligence claim and enter an order dismissing the *Monell* claim entirely; his institutional negligence claim; and his punitive damages claim, all with prejudice, plus award the Defendants costs and fees.

Respectfully submitted,

GHALIAH OBAISI, Independent Executor of the Estate of Saleh Obaisi, M.D., Deceased ("Dr. Obaisi"), and WEXFORD HEALTH SOURCES, INC.

By: /s/ *James F. Maruna*

Matthew H. Weller
Ronald E. Neroda
Joseph J. Lombardo
James F. Maruna
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
rneroda@cassiday.com
jlombardo@cassiday.com
jmaruna@cassiday.com

Counsel for Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice of E-Filing" to all attorneys of record in this case.

/s/ James F. Maruna