| | |
|---|---|
| DAVID GEVAS, | |
| Plaintiff, | No. 16 C 10599 |
| v. | Hon. Judge Mary M. Rowland |
| SALEH OBAISI, *et al.*, | Magistrate Judge Sunil R. Harjani |
| Defendants. | |

**MOTION AND MEMORANDUM IN SUPPORT OF**
**<u>EMERGENCY PRELIMINARY INJUNCTION</u>**

Plaintiff David Gevas hereby moves this Court to enter a preliminary injunction on an emergency basis requiring the Illinois Department of Corrections and their vendor, Wexford Health Sources, to provide timely care in accordance with the recommendations of his oncologist at UIC. Mr. Gevas was previously diagnosed with cancer (specifically, diffuse large B-cell lymphoma or "DLBCL"), and it appears from a CT scan conducted on November 9, 2022, that it likely has recurred. The UIC oncologist had requested that this CT scan occur "ASAP" after his July 2022 visit with the oncologist. When it did not occur, Mr. Gevas grieved the delay, only to receive a response that essentially told him that it was not for him to decide what care he would receive or when. Once the scan was finally completed on November 9, 2022—four months late—it revealed a pulmonary nodule and other reactive areas that must be ruled out for possible recurrence of lymphoma. Wexford has advised that Mr. Gevas will be sent out to UIC oncology for follow-up from the CT scan "soon," but that does not mean he will actually receive the care recommended by the UIC oncologist. Plaintiff therefore respectfully requests that this Court order Defendants to implement whatever treatment the UIC oncologist deems necessary, in a timely fashion and in accordance with the specific recommendations of the UIC specialist.

1

STATEMENT OF FACTS

Plaintiff David Gevas is an inmate in the custody of the Illinois Department of Corrections, currently housed at Dixon Correctional Center. This case involves, among other claims, the failure of IDOC and Wexford medical staff at Stateville Correctional Center to appropriately follow-up on recommendations from a UIC radiologist regarding a pulmonary nodule found on a chest CT scan conducted in April 2014. The recommendation was that Mr. Gevas have another chest CT scan within 6-12 months, but no follow-up scan was ever ordered. *See* Ex. 5, Dr. Finander 1/8/2023 Affidavit. In 2016, Mr. Gevas was hospitalized for chest pain after months of night sweats, cough, and an unexplained broken rib. At that time, he was diagnosed with Stage IV diffuse large B-cell lymphoma, which had caused numerous lytic lesions in his ribs, spine, and clavicle and had even fractured his clavicle. *Id.*; ECF No. 435-1. The lymphoma, which would have been detected much earlier if the follow-up scans recommended by UIC had been conducted, was present in his lungs and throughout his body. *Id.*

Mr. Gevas underwent several rounds of chemotherapy and, at his December 29, 2019 oncology appointment at UIC, Mr. Gevas's diffuse large b-cell lymphoma was considered to be in full remission. *See* ECF No. 435-1. However, in May 2022, Mr. Gevas received an MRI for continued pain in his back and at a July 2022 appointment with UIC oncology, a full-body PET CT scan was requested "ASAP" to rule out recurrence of lymphoma. Ex. 1, Sept. 2022 Grievance; Ex. 2, WHS UM Notes, at 24.

Despite the recommendation that the PET CT scan be done "ASAP," it did not occur until four months later. Ex. 3, Nov. 9, 2022 PET/CT. In the interim, Mr. Gevas filed a grievance on September 9, 2022 about the delay. Ex.1, Sept. 2022 Grievance. In the grievance, he noted that it had been over six weeks since UIC had recommended he be sent for a PET/CT to rule out

2

reoccurring cancer in his spine, yet the writ office had notified him that there was no appointment scheduled for him to go for the scan. *Id.* He explained that the cancer he previously had was an aggressive cancer and requested that he immediately be sent out for a PET/CT to rule out cancer. *Id.* While the chief administrative officer (CAO) determined that an expedited response to his grievance was appropriate, the response he received did not resolve the issue. *Id.* To the contrary, the response stated, "The Grievance Officer notes all treatment must be ordered by the licensed physician at this facility and not a matter of inmate preference. The grievance Officer has no authority to evaluate clinical decisions made by licensed physicians." *Id.* The Health Care Unit Administrator's response similarly stated that "[u]rgency is medically determined by the provider, not by the IIC [individual in custody]." *Id.*

Mr. Gevas finally was sent for the PET/CT scan on November 9, 2022. The scan revealed a new, 1.3 cm pulmonary nodule that, according to the radiologist note, is "concerning for malignancy, primary pulmonary versus lymphoma." Ex. 3, Nov. 9, 2022 PET/CT. The results further showed a mass in his nasal cavity that resulted in an elevated "standard uptake value" of 8.6. *Id.* Plaintiff was previously advised by his UIC oncologist that any SUV value above 5.0 would require further follow-up due to his history of lymphoma.

On November 14th, 2022, during a follow-up with Dixon's medical director, Dr. Sy, regarding the results of the PET CT scan, Mr. Gevas asked whether he would be sent out to the UIC oncologist to follow-up on the results. Mr. Gevas was told that he would not be sent out on an urgent basis. When Mr. Gevas further inquired what the results meant, Dr. Sy told him that he did not know.

Plaintiff then consulted with his medical expert in this case, Dr. Paulette Finander, about the significance of these results. *See* Exhibit 5; *see also* ECF No. 435-1. Dr. Finander advised

that "Mr. Gevas should be urgently seen again by an oncology or hematology specialist who can compare the November 2022 CT/PET scan to Mr. Gevas' prior radiology studies and obtain for Mr. Gevas in a timely manner the appropriate medical care that is required under national standards of care. Not doing so would subject Mr. Gevas to the consequences of delayed diagnosis and treatment." ECF No. 435-1.

Plaintiff's counsel raised this issue with Defendants' counsel on December 2, 2022. On December 13, 2022, counsel for Wexford informed Plaintiff's counsel that Plaintiff had been approved and scheduled for a follow-up appointment with UIC oncology, but that the date would not be provided to Plaintiff or his counsel for security reasons. In lieu of an exact date, Defendants provided a list of utilization management notes indicating an upcoming appointment had been scheduled with UIC oncology as a result of a previous recommendation by UIC on. Ex. 2, UM Notes, at 24. The notes for this upcoming visit indicate that it was scheduled in response to the July 2022 visit with "Heme-Onc," after which it was determined that the patient "need[ed] PET/CT whole body and port removal ASAP then f/u with Heme-Onc." *Id.*

At a court status on December 22, 2022, counsel for Wexford assured Plaintiff's counsel and the Court that Mr. Gevas would be sent out "soon" for the already-scheduled follow-up with UIC oncology. This Court then scheduled a status for Tuesday, January 17, 2023, to follow up on those assurances.

On January 6, 2023, Plaintiffs' counsel sent a draft copy of this motion to counsel for Wexford and the IDOC to see if they would agree to the relief requested in this motion. Counsel for Wexford Defendants indicated that they objected to the motion. As of the filing of this motion, Plaintiff's counsel had not heard back from counsel for the IDOC as to their position on this motion.

4

LEGAL STANDARD

A preliminary injunction is proper when the plaintiff establishes that he: (1) has a reasonable likelihood of success on the merits; (2) has no adequate remedy at law; and (3) will suffer irreparable harm absent the injunction. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). Courts must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate[] the effect of an injunction on the public interest." *Id*. In balancing the harms, "[t]he more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in its favor*.*" *Id.* (*quoting Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc*., 549 F.3d 1079, 1100 (7th Cir. 2008)). The Prisoner Litigation Reform Act ("PLRA") additionally requires that a preliminary injunction "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

ARGUMENT

Through this motion, Plaintiff seeks an order requiring Defendants to comply with the treatment recommendations of UIC oncology following his January 2023 appointment, should there be a clinical finding that Mr. Gevas's cancer has recurred. Given Defendants' pattern of extreme delays—first, a four-month delay in obtaining a PET/CT scan that was to be conducted "ASAP," and then another two-month delay in conducting a visit with UIC oncology to evaluate the PET/CT scan results and determine next steps—this Court's intervention is necessary to ensure that Mr. Gevas obtains the treatment that is likely to be required based on recurrence of cancer.

**I.     Mr. Gevas is Likely to Succeed on the Merits of his Eighth Amendment Claim**

The Eighth Amendment requires the Department of Corrections to provide medical care to persons in its custody and "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (*quoting Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A plaintiff demonstrates a violation of the Eighth Amendment when they show that (1) the plaintiff has an objectively serious medical condition, and (2) that prison officials acted with "deliberate indifference" to the serious medical condition. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). "The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard." *Id*. at 777 (*citing Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

   *a. Mr. Gevas has an objectively serious medical condition.*

Here, the presence of a 1.3cm pulmonary nodule that has been deemed by a trained radiologist as "concerning for malignancy" is an objectively serious medical condition, especially in light of Mr. Gevas' known, recent history of diffuse large B-Cell lymphoma which was present in his lungs and throughout his body. According to WebMD, diffuse large B-cell lymphoma is an aggressive, fast-growing cancer that should be treated quickly. Ex. 4, WebMD article. As Mr. Gevas's own history demonstrates, when DLBCL is not treated quickly, it can lead to lytic lesions that weaken and break the patient's bones, such as the rib and clavicle fractures Mr. Gevas experienced in 2016 as a result of the fast-growing cancer. *See* ECF No. 399-9, Gevas Med Records, at 56-57.

*b. Defendants are deliberately indifferent to Mr. Gevas's serious medical condition*

Deliberate indifference "occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*, 792 F.3d at 776. For example, an official may exhibit deliberate indifference by knowing of a risk to the health or safety of an inmate and administering "blatantly inappropriate" treatment, acting "contrary to the recommendation of specialists," or delaying "treatment for non-medical reasons, thereby exacerbating pain and suffering." *Id*. at 777 (citing multiple cases). "The Eighth Amendment protects a detainee not only from deliberate indifference to his or her current serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to *future* health." *Board v. Farnham*, 394 F.3d 469, 479 (7th Cir. 2005) (emphasis in original) (*citing Henderson v. Sheahan*, 196 F.3d 839, 846–47 (7th Cir. 1999)).

The failure to follow the recommendation of a specialist for a non-medical reason can be considered deliberate indifference. *Perez*, 792 F.3d at 778 (citing Arnett, 658 F.3d at 753). While prison officials may consider administrative convenience and cost in making medical decisions, "the Constitution is violated when they are considered to the *exclusion* of reasonable medical judgment about inmate health." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis in original).

Likewise, a delay in treatment that exacerbates an injury or unnecessarily prolongs pain is also sufficient to establish deliberate indifference. *McGowan*, 612 F.3d at 640. In considering whether a delay in treatment is acceptable, courts consider the seriousness of the condition and the ease of providing care. *Id*. A delay of mere hours or days can be enough to establish deliberate indifference. *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) (holding a delay causing "many more hours of needless suffering for no reason" is enough to infer deliberate

indifference); *Grieveson v. Anderson*, 538 F.3d 763, 778–80 (7th Cir. 2008) (holding a day-and-a-half delay in medical treatment could establish deliberate indifference).

While Dixon's medical director, Dr. Sy, is not a party to this action, his employer, Wexford Health Sources, is a Defendant to this action. Wexford is and has been on notice of Mr. Gevas's serious medical condition, both the history of his DLBCL diagnosis as well as his recent November 2022 PET CT scan results. While they have represented to counsel that a follow-up appointment has been scheduled, no appointment has yet occurred, after more than 6 weeks. This delay is contrary to widely accepted standards regarding follow-up on a potentially malignant finding in the PET CT scan of a patient with a known history of lymphoma.

In failing to timely schedule a PET/CT scan as recommended by the UIC oncologist and then further failing to schedule a timely follow-up appointment with an oncologist regarding the potentially malignant pulmonary nodule, Defendants have repeatedly disregarded the risk that Mr. Gevas will develop a more severe and widespread cancer, possibly resulting once again in fractured bones and possibly becoming more difficult to successfully treat. Defendants continue to unnecessarily delay diagnosis and treatment of this potential cancer. This continuing delay is unreasonable given the serious risk of damage to Mr. Gevas's future health and survival, and indeed, Defendants have not provided any explanation for this continued delay.

## II. Mr. Gevas Has No Adequate Remedy at Law

The second inquiry in considering a preliminary injunction is whether an adequate remedy exists at law. The plaintiff must "demonstrate that traditional legal remedies, i.e., money damages, would be inadequate." *Farnam v. Walker*, 593 F. Supp. 2d 1000, 1013 (C.D. Ill. 2009) (*quoting Girl Scouts of U.S., Inc.*, 549 F.3d at 1095). Here, no amount of money would adequately compensate Mr. Gevas for the potential threat to his life and health posed by delayed

diagnosis and treatment of a rapidly growing lymphoma. *See Mitts v. Martin*, No. 3:15-CV-811-NJR-DGW, 2016 WL 1211919, at *3 (S.D. Ill. Mar. 29, 2016) ("If Plaintiff's cancer is not treated appropriately, it is possible that it will become lymphoma, and money damages would be an insufficient remedy.") This element is therefore easily met.

### III. Mr. Gevas Will Suffer Irreparable Harm Absent a Preliminary Injunction

Irreparable harm is that which "the district court cannot remedy following a final determination on the merits." *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980). It is hard to imagine a harm more irreparable than rapid spread of cancer, resulting in potential broken bones, damage to organs, loss of life or loss of chance. In *Mitts v. Martin,* the Southern District of Illinois considered a similar case where an IDOC inmate was not being sent out to see the outside specialist for a skin cancer that had the possibility of developing into lymphoma within the timeframe specified by the outside specialist. In granting in part Plaintiff's motion for a preliminary injunction, the Court concluded that "[t]he conversion of Plaintiff's cancer into lymphoma could not be undone after a final determination on the merits of Plaintiff's claim, which places Plaintiff in the position to suffer irreparable harm if his injunction is denied." *Mitts v. Martin*, No. 3:15-CV-811-NJR-DGW, 2016 WL 1211919, at *3 (S.D. Ill. Mar. 29, 2016). For the same reasons, delayed detection and treatment of possible lymphoma here will cause Plaintiff irreparable harm

### IV. The Balance of Harms and the Public Interest Weigh Heavily in Mr. Gevas's Favor

A court "must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council Inc.*, 555 U.S. 7, 24 (2008). The balance of harms weighs in favor of providing necessary medical treatment because it is "the public, Illinois taxpayers, who would be paying the bill for any outside specialist, have a vested interest in

ensuring that the constitutional rights of its citizens are protected." *Akers v. Wexford Health Sources, Inc.*, No. 14-CV-00997-JPG-DGW, 2015 WL 4574754, at *8 (S.D. Ill. July 29, 2015).

Again, as in *Mitts v. Martin*, Plaintiff's request for a furlough to an outside oncologist for timely and appropriate treatment of his likely recurrence of cancer does not cause any harm to Defendants that would outweigh the harm to Plaintiff if such treatment does not take place expeditiously. 2016 WL 1211919, at *4.

V.      **The Requested Relief Is Appropriate under the PLRA**

The PLRA requires that any prospective relief on behalf of a prisoner be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). An injunction ordering Defendants to provide Mr. Gevas treatment for his likely recurrence of cancer is the only means of correcting Mr. Gevas's ongoing constitutional injury, *see* Exhibit 5, and it is narrowly tailored to correct the current harm, which includes a long history of delay in implementing the treatment and follow-up recommendations of specialists at UIC.

Dated: January 9, 2023

RESPECTFULLY SUBMITTED,

/s/   Samantha R. Reed
Samantha Reed
Harold Hirshman
DENTONS US LLP
233 S. Wacker Drive, Suite 7800
Chicago, IL  60606
Telephone: (312) 876-8000
Facsimile:  (312) 876-7934
harold.hirshman@dentons.com
samantha@equipforequality.org

**CERTIFICATE OF SERVICE**

 It is hereby certified that on January 9, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel for all parties.

           <u>/s/ Samantha R. Reed</u>

           One of the Attorneys for Plaintiff