IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID GEVAS, | |
| Plaintiff, | Case No. 16-cv-10599 |
| v. | Honorable Judge Mary M. Rowland |
| RANDY PFISTER, | |
| Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTIONS *IN LIMINE*** 

Defendant Randy Pfister ("Defendant" or "Warden Pfister"), by and through his attorney, Kwame Raoul, Attorney General of Illinois, hereby responds in opposition to Plaintiff's motions *in limine* (Dkt. 519). Defendant Pfister opposes Plaintiff's Motion *in Limine* No. 1, to bar reference to Plaintiff's prior convictions and bad acts. In particular, Defendant strongly opposes Plaintiff's motion to the extent it would prevent Defendant from cross-examining Plaintiff's psychology expert, Dr. David Rakofsky, on the facts that formed the basis for his opinion. Defendant does not oppose Plaintiff's Motion in Limine No. 2, which seeks to bar Plaintiff's disciplinary history, and opposes Plaintiff's Motion in Limine No. 3 only to the extent that Defendant requests that whether Plaintiff should wear restraints in the courtroom be left to the U.S. Marshal.

**I. Plaintiff's Motion *in Limine* #1, to Bar Evidence of Plaintiff's Prior Convictions or Bad Acts, Should Be Denied.**

Plaintiff's motion to bar evidence of his "prior arrests, convictions, or bad acts," should be denied as relates to: (1) admission of the fact Defendant was convicted of a felony; and (2) the ability to cross-examine Plaintiff's psychologist expert, Dr. Rakofsky, about the facts underlying his report, which include Plaintiff's history and psychological profile. First, setting Dr. Rakofsky's opinion aside, Rule 609 is best served by informing the jury that Plaintiff has been convicted of a

felony, even if the details of the crime are excluded. But if Dr. Rakofsky testifies, Defendant must be able to go further. Dr. Rakofsky's psychological profile of Plaintiff includes the murder of his children. Dr. Rakofsky has testified that this very act – not the medical care he received in this case – is his "principal trauma." Having put Plaintiff's psychological state at issue, Plaintiff has opened the door for cross-examination of his expert on this subject.

### A. Evidence of Plaintiff's Felony Conviction Is Relevant and Not Unduly Prejudicial.

First, while Plaintiff asserts that his felony conviction is irrelevant, Rule 609 makes a felony conviction presumptively relevant by stating that the conviction "*must be admitted*, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant." Fed. R. Evid. 609(a)(1)(A) (emphasis added). Further, the 10-year bar on conviction evidence does not apply here, because that bar only "applies if more than 10 years have passed since the witness's conviction or release from confinement for it, *whichever is later*." Fed. R. Evid. 609(b) (emphasis added). Only Plaintiff's release would start the clock, but Plaintiff is still confined.

This leaves the question of whether the probative value of Plaintiff's felony conviction is outweighed by its prejudicial effect. Plaintiff is only one of four witnesses on his "will call" list, along with his experts and Defendant Pfister. Accordingly, his credibility will be central to the trial. Moreover, the fact that Plaintiff was convicted of a felony, without details about the felony, is not unduly prejudicial. This accomplishes the goal of Rule 609(a), "to allow use of felonies generally, without regard to the nature of the particular offense. Fed. R. Evid. 609, advisory note. Other courts have found not only that such evidence should be admitted, but that such evidence should be admitted specifically against Plaintiff. *Gevas v. McCann*, No. 08 CV 3074, 2014 U.S. Dist. LEXIS 88144, at *3 (N.D. Ill. June 27, 2014) (allowing jury to be told that Gevas was convicted of a felony and was a resident of the Illinois Department of Corrections).

The Court should follow the *McCann* approach and allow the jury to be told that Gevas was convicted of a felony, even if the specific felony is not referenced.[1] That said, it is only appropriate to limit any reference to Gevas's crime if Dr. Rakofsky does not testify. If he is permitted to testify, Plaintiff's act of murdering his children is a basis for Dr. Rakofsky's opinions, and Defendant must be permitted to ask Dr. Rakofsky questions about it.

### B. If Plaintiff's Expert, Dr. Rakofsky, Is Allowed to Testify, Defendant Must Be Permitted to Probe Plaintiff's Full Psychological Profile, Including the Murder of His Children.

As Defendant has already asserted in moving to exclude Plaintiff's psychologist expert, Dr. Rakofsky, this witness offers no testimony relevant to Warden Pfister.[2] But Plaintiff asserts

---

[1] Although Plaintiff asserts (Dkt. 519 at 3) that conviction evidence should be barred because Defendant has not produced a copy of his conviction, Defendant will be able to obtain a certified copy of conviction before trial commences, and in any event, the jury can be told he has a felony conviction without a certified copy being introduced into evidence.

[2] Plaintiff's Response to Defendant's Motion to Exclude both experts (Dkt. 525) does not – and cannot – contest the fact that these experts have nothing to say about Defendant. Plaintiff's cite to Judge Lee's order denying Defendants' motion to dismiss (*Id.* at 2) is unavailing. Of course, being able to state a claim has nothing to do with whether evidence is admissible at trial, and here, Plaintiff's expert evidence is irrelevant to Defendant Pfister.

Plaintiff suggests that the experts are necessary in part to prove that Plaintiff had a "serious medical condition." (*Id*. at 1.) Defendant will stipulate to the fact that Plaintiff's cancer diagnosis was a "serious medical condition." No special expertise is needed for that. The only question for the jury on liability, then, is whether Defendant acted with deliberate indifference to Plaintiff's serious medical needs. Neither expert has any opinion about that.

Nor can Plaintiff use experts to bootstrap a so-called "systemic problem" of medical care at Stateville into personal knowledge on the part of IDOC personnel about *Gevas's* care. Rather, as the Court ruled on summary judgment, defendants must have "obtained actual knowledge…of *Gevas's* medical condition and inadequate medical care[.]" (Dkt. 432 at 10-11). Only knowledge of "systemic conditions" impacting many inmates at once, like pest infestations and mold, can be imputed to a prison official. (*See Silva v. Pfisteri*, No. 18-CV-5214, 2021 WL 1103483, at *7 (N.D. Ill. Mar. 23, 2021); *Richard v. Baldwin,* 2018 WL 6606037, at *4 (N.D. Ill. Dec. 17, 2018). Plaintiff's cancer diagnosis and treatment are specific to him, not systemic. The Court should not allow the jury to be biased by expert opinions that do not make any fact of consequence more likely, but rather, could only prejudice Warden Pfister. Fed. R. Evid. 401, 403.

that Dr. Rakofsky's testimony is necessary to provide "professional support for a claim of serious psychological injury and mental anguish." (Dkt. 525 at 1). Although "an expert may state an opinion – and give the reason for it – without first testifying to the underlying facts or data[,] the expert may be required to disclose those facts or data on cross-examination." Fed. R. Evid. 705. Here, those facts include Plaintiff's full psychological history as Plaintiff related it to Dr. Rakofsky in a four-hour interview which included a battery of tests. (Ex. 1, Rakofsky Rpt. at 1-2).

If Dr. Rakofsky is allowed to testify, he opens the door to Plaintiff's full psychological profile, including the murders of his children, which Plaintiff told Rakofsky was his "principal trauma." (Ex. 2, Rakofsky Dep. at 72:20-73:5). Courts have recognized that introducing testimony relating to psychological harm or prior traumas opens the door to other evidence related to those matters. *See Doe v. St. Vincent Med. Grp., Inc.*, No. 19 C 3777, 2019 U.S. Dist. LEXIS 199847, at *8 (N.D. Ill. Nov. 18, 2019) (finding that by placing her therapist's diagnosis at issue, plaintiff opened the door to disclosure of other confidential records relating to that diagnosis); *Ramirez v. Kranski*, no. 15-cv-365-wmc, 2021 U.S. Dist. LEXIS 112684, at *12-13 (W.D. Wis. June 16, 2021) ("[S]hould plaintiff claim psychological harm, this may open the door to defendant introducing causation evidence relating to other incidents."); *Allen v. Richardson*, No. 16-cv-410-wmc, 2019 U.S. Dist. LEXIS 17619, at *8 (same); *Brinkley v. Houk*, Case No. 40:06 CV 0110, 2012 U.S. Dist. LEXIS 60612, at *22 (N.D. Ohio Apr. 30, 2012) (no ineffective assistance of counsel in failing to introduce expert testimony about criminal defendant's narcissism diagnosis where doing so would open the door to testimony about defendant's criminal history).

Directly undermining Plaintiff's motion *in limine*, Plaintiff seeks to admit Dr. Rakofsky's report, which discusses his conviction for murder, his request for the death penalty, and the trauma of losing his children, as an exhibit. (Ex. 1, Rakofsky Rpt. at 3, 11). Dr. Rakofsky's report is

inadmissible hearsay (not to mention again, irrelevant with respect to Warden Pfister) and should not be allowed into evidence, but this is another way in which Plaintiff has opened the door to disclosure of this information.

Dr. Rakofsky's opinion is based on his psychological evaluation of Plaintiff, which he based on four-hour interview in which Plaintiff gave an account of his life, including his history of depression and trauma. (*Id*. at 1). Dr. Rakofsky testified that where, as here, he does not have access to a subject's mental health records, he "must rely entirely on their subjective reporting of their mental health history" and his "observations of them in the interview." (Ex. 2, Rakofsky Dep. at 30:6-12). Dr. Rakofsky's report notes that Plaintiff "had three children with his first wife[,]" "was arrested for murder in 1992," and that he "pleaded guilty in 1993 and asked for the death penalty, which he received." (Ex. 1, Rakofsky Rpt. at 3). These are facts that Plaintiff voluntarily conveyed in his interview with Dr. Rakofsky. (Ex. 2, Rakofsky Dep. at 56:6-9 (stating that Plaintiff discussed the reason why he was in prison during his interview)). On the PTSD Checklist that Dr. Rakofsky administered, and on which he relied, Plaintiff disclosed "the death of his two infant twins." (*Id*. at 11, 2 (noting that Rakofsky's report is based in part on Gevas's PTSD Checklist)). Dr. Rakofsky testified that "the commission of the murder" was "the most traumatizing thing" in Plaintiff's life. (Ex. 2, Rakofsky Dep. at 76:3-6.)

Dr. Rakofsky fully incorporates into his opinion Plaintiff's baseline psychological state before any of the events in this case. Dr. Rakofsky opines, for example, that Plaintiff has severe, recurrent major depressive disorder, and has symptoms of this disorder that "represent a change from previous functioning." (Ex. 1, Rakofsky Rpt. at 14). He also opines that Plaintiff has posttraumatic stress disorder (PTSD). (*Id*.) Rakofsky opines that "the treatment by those responsible for his welfare while imprisoned brought new and mere severe symptomology to

bear." (*Id*. at 15.) But he also opines that Plaintiff's mental health conditions are "arguably life-long." (*Id*. at 3). Dr. Rakofsky testified that Plaintiff may not have had PTSD before the murder of his children, but he certainly had PTSD afterward. (Ex. 2, Rakofsky Dep. at 100:13-101:10). Dr. Rakofsky testified that Plaintiff "named that as his principal trauma." (*Id*. at 72:20-73:5; 75:20-76:2). He specifically described how trauma is not "something that always happens to you," but rather, can be caused by one's own actions. "[T]he way [Gevas] viewed that was that he did this thing and it traumatized him for the rest of his life, and it's intuitive. But yes, to answer your question, it's probably the principal trauma of his PTSD." (*Id*. at 72:20-73:5). He testified that Plaintiff asked for the death penalty because he murdered his children. (*Id*. at 104:19-22).

Dr. Rakofsky's ultimate conclusion is that Plaintiff's treatment in IDOC "has caused him significant psychological distress and unnecessary suffering such that an already disturbed individual, with a lifetime of poor mental adjustment and history of serious mental illness, quite pronounced during episodes in his life, was rendered psychologically in tatters by the end." (Ex. 1, Rakofsky Rpt. at 17). It is apparent that Plaintiff's already-low baseline – his "lifetime of poor mental adjustment and history of serious mental illness" – is fundamental to Dr. Rakofsky's opinion that Plaintiff ended up "psychologically in tatters." (*Id*.) If Dr. Rakofsky is permitted to testify, Defendant must be able to probe this opinion by asking questions that go to causation of his suffering and distress, including Plaintiff's questions psychological condition before the alleged mistreatment, so that the jury can determine whether and to what extent any psychological distress existed before any actions or inactions of Defendant.

Dr. Rakofsky's opinion opens the door to the various traumas in Plaintiff's life. Under Federal Rule of Evidence 705, Defendant must be permitted to cross-examine Dr. Rakofsky about the facts underlying his report – including Plaintiff's prior trauma, which includes the murder of

Page 6 of 7

his children. Plaintiff should not be allowed to avail himself of a psychology expert and then wall off a significant part of the psychologist's evaluation. Allowing Plaintiff to have it both ways would be contrary to Rule 705 and prejudicial to Warden Pfister.

**II.** **Plaintiff's Motion *in Limine* #2, to Bar Evidence of Plaintiff's Disciplinary Infractions, Incidents, or Allegations of Wrongdoing While Incarcerated, Is Unopposed.**

Plaintiff has not specified any disciplinary infractions/incidents or allegations of wrongdoing that it wishes to be barred, and Defendant is unable to identify evidence of any that Defendant would seek to introduce at trial. Accordingly, Defendant does not oppose Plaintiff's motion.

**III.** **Plaintiff's Request Motion *in Limine* #3 to Allow Plaintiff to Appear Unrestrained Should Be Determined by the U.S. Marshal.**

Defendant does not oppose Plaintiff's request to appear in civilian clothes, but requests that the Court allow the U.S. Marshal to determine, based on safety considerations, whether to require Plaintiff to wear leg restraints.

WHEREFORE, Defendant prays this Court deny Plaintiff's Motion *in Limine* No. 1 and deny Plaintiff's Motion *in Limine* No. 3 in part, and grant such further relief as the Court finds reasonable and just.

Date: April 22, 2024

KWAME RAOUL
Attorney General of Illinois

Respectfully submitted,

By: /s/ *Amy Crawford*
AMY CRAWFORD
Assistant Attorney General
Office of the Illinois Attorney General
115 S LaSalle St., 28th Fl.
Chicago, Illinois 60603
(773) 550-8865
Amy.Crawford@ilag.gov