IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID GEVAS, | |
| Plaintiff, | |
| v. | Case No. 16-cv-10599 |
| RANDY PFISTER, | Judge Mary M. Rowland |
| Defendant. | |

## MEMORANDUM ORDER AND OPINION

Plaintiff David Gevas ("Gevas") sued Defendant Randy Pfister ("Pfister"), an Illinois Department of Corrections ("IDOC") employee, for inadequate medical care he suffered in state custody. In July 2024, a jury found in favor of Pfister on the claim of deliberate indifference. [601]. Gevas filed a timely motion to vacate judgment and for a new trial. [620]. Gevas also filed a motion for leave to contact a juror. [609]. For the following reasons, the Court denies Gevas' motion for post-trial relief and denies Gevas' motion for leave to contact a juror.

**I. Background**

Gevas is an inmate in the custody of IDOC and was incarcerated at Stateville Correctional Center ("Stateville") at all times relevant to this action. [432] at 3. Pfister was the warden of Stateville from November 2015 to February 2018. *Id.* John Baldwin ("Baldwin") was the acting director of IDOC from August 2015 to May 2019. *Id.* Wexford Health Sources, Inc. ("Wexford") is a private company that provided medical services to inmates at Stateville pursuant to its contract with IDOC. *Id.* Dr.

1

Saleh Obaisi ("Obaisi") was employed by Wexford as the medical director at Stateville from August 2012 to December 2017. *Id.*

In May 2014, Gevas was hospitalized and diagnosed with sleep apnea, atrial fibrillation, and a pulmonary micronodule in his lung. *Id.* Two years later, in March 2016, Gevas was diagnosed with stage IV non-Hodgkins lymphoma. *Id.* at 1. Gevas sued Pfister, Baldwin, Obaisi, and Wexford alleging that they violated his Eighth Amendment rights because they were deliberately indifferent to his medical conditions resulting in a delayed cancer diagnosis. [1]; [11]; [35]. Gevas' claims against Baldwin were dismissed at summary judgment. [432]. Gevas settled his claims against Obaisi and Wexford in March 2024. [509]. Gevas proceeded to trial in July 2024 against Pfister as the sole remaining defendant on his Eighth Amendment deliberate indifference claim. [592]. The jury found in favor of Pfister on Gevas' deliberate indifference claim. [601].

## II. Standard

A motion for a new trial under Rule 59 may be granted only "when the district court—in its own assessment of the evidence presented—believes that the verdict went against [its] manifest weight." *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 831 (7th Cir. 2020) (alteration in original) (quoting *Mejia v. Cook County*, 650 F.3d 631, 634 (7th Cir. 2011)). Rule 59(a) grants the trial court the "special power" to get a "general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts." *Id.* (quotation omitted).

In moving for a new trial, a party seeking to overturn a court's evidentiary ruling "bears a heavy burden" because a trial court's balancing of probative value and unfair prejudice is highly discretionary. *Henderson v. Wilkie*, 966 F.3d 530, 534 (7th Cir. 2020) (quoting *Speedy v. Rexnord Corp.*, 243 F.3d 397, 404 (7th Cir. 2001)). "As a general rule, '[u]nless justice requires otherwise,' errors in excluding evidence will generally not warrant a new trial." *Id.* at 534-535. Evidentiary errors warrant a new trial only "if the evidentiary errors had 'a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice.'" *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 812 (7th Cir. 2021) (quoting *Fields v. City of Chicago*, 981 F.3d 534, 544 (7th Cir. 2020)).

A party who seeks a new trial based on an allegedly faulty jury instruction must show that the "instruction misstates the law in a way that misguides the jury to the extent that the complaining party suffered prejudice." *Armstrong v. BNSF Ry. Co.*, 880 F.3d 377, 381 (7th Cir. 2018) (internal quotation marks omitted). The moving party must show both confusion *and* prejudice; "[e]ven if we believe that the jury was confused or misled, we would need to find that the defendants were prejudiced before ordering a new trial." *Jimenez v. City of Chicago*, 732 F.3d 710, 717 (7th Cir. 2013). An erroneous jury instruction cannot prejudice a complaining party "unless considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed about the applicable law." *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001).

III. Analysis

### A. Evidentiary Arguments

#### i. Shanksy Report

Gevas argues that the Court erred by granting Pfister's motion *in limine* to bar references to reports from *Lippert v. Godinez*, Case No. 10-cv-4603 (N.D. Ill.), a long running class action lawsuit regarding healthcare in Illinois prisons. [620] at 2-5. Pfister asked the Court to bar references to reports prepared in connection with the *Lippert* litigation, including a 2014 report issued by a court appointed expert, Dr. Ron Shanksy (the "Shanksy Report"). [521] at 9-11 (MIL #7). The Shanksy Report identified system-wide failures in health care at IDOC facilities, including the collegial review process that Gevas alleged delayed his diagnosis. *See* [539] at 3. The Court granted Pfister's motion *in limine* prior to trial and held that the Shanksy Report would not be admitted. *See* [539] at 3; [545]. Gevas filed a motion for clarification and requested permission from the Court to question Pfister and Baldwin about the Shanksy Report. [571]. The Court ruled that Gevas could not reference the Shanksy Report at all in his examination of either Baldwin or Pfister. [579].

In support of his request for a new trial, Gevas argues that the Court erred by excluding the Shanksy Report before trial because the evidentiary ruling should have been deferred until trial to allow questions of relevancy and prejudice to be resolved in context. [620] at 2. Gevas argues that questioning Pfister about the Shanksy Report could have shown that Pfister knew of the problems described in the report and was "burying his head in the sand" with regard to those problems. *Id.* at 2-3.

4

Gevas asserts that the Shanksy Report was relevant for notice purposes because the report dealt with Stateville specifically and the issues discussed in the report relate directly to Gevas' complaints. *Id.* at 3.

The Seventh Circuit has made clear that the Shanksy Report is inadmissible hearsay and cannot serve as evidence for the truth of what happened to other inmates. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 232 (7th Cir. 2021); *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 522 (7th Cir. 2019) (collecting cases). However, a plaintiff may be able to introduce evidence of the Shanksy Report for notice purposes. *See Dean*, 18 F.4th at 232-234. In *Dean*, the Seventh Circuit "recognize[d] that it is usually necessary in *Monell* cases to introduce evidence of a prior pattern of similar constitutional violations." *Id.* at 234. Therefore, "[a] court should hesitate to hold that evidence is inadmissible under Rule 403 when the governing law makes it necessary to introduce evidence that might confuse the issues or mislead the jury." *Id.* However, the Seventh Circuit also emphasized that "a court should carefully balance the[] probative value" of the Shanksy Report against the danger of confusing the issues and misleading the jury. *Id.* at 234.

The difference between *Dean* and Gevas' case is that Gevas' *Monell* claim against Wexford was resolved prior to trial. *See* [509]. The only claim remaining at trial was deliberate indifference against Pfister individually, and Gevas was required to show that Pfister was personally involved in the alleged constitutional violation. As the Court noted in its previous ruling, "[t]he Shansky report takes a system-wide view and does not get Gevas closer to the issue of personal involvement." [539] at 3.

5

The Court also explained that "the prejudicial effect of the report is great" because it "contains unequivocal conclusions about systemic failures in the provision of medical care" and the jury would be instructed "to ignore those conclusions and focus on Pfister's individual actions." *Id.* Therefore, the Court found that "the probative value of the Shansky report does not outweigh the prejudicial effect of its unequivocal conclusions." [545]. Without a *Monell* claim at issue at trial, it was not necessary to allow the Shanksy report despite the likelihood of confusing the issues or misleading the jury. The Court did not err in excluding references to the Shanksy Report.

Even if it had, the result was not inconsistent with substantial justice. Gevas was free to present other, non-prejudicial, evidence regarding Pfister's personal involvement in the alleged conduct. Gevas questioned Pfister about his personal involvement in healthcare at Stateville generally, Gevas' healthcare specifically, and Gevas' grievances related to his healthcare. *See* [613] (Trial Tr. 7/9/2024) at 139-171. Gevas also questioned both Baldwin and Pfister about the appropriateness of delegating oversight of healthcare and grievances to subordinates. *See id.* at 108:19-109:6; 135:18-136:5; 157:20-159:12. The Court declines to award a new trial on this basis.

### ii. Questioning About Discovery Productions

Gevas argues that the Court erred by allowing questioning regarding when Gevas produced certain documents to Pfister. [620] at 5-7. At issue are three letters Gevas allegedly sent to Pfister in January and February 2016, and which were produced to Pfister for the first time shortly before trial in April 2024. *Id.* at 6.

6

Pfister initially filed a motion *in limine* seeking to exclude Gevas' testimony about the letters, arguing that Gevas had previously given contradictory testimony that he could not recall sending any written correspondence outside the grievance process to Pfister. [521] at 3-4 (MIL #3). The Court denied Pfister's motion *in limine*, holding that the issue was "a question of credibility, not admissibility," and that "Gevas may testify about the letters and Pfister may cross-examine him to the extent that the testimony is inconsistent with prior statements." [539] at 2. Gevas subsequently filed his own motion *in limine* seeking to bar Pfister from questioning Gevas about when the letters were produced, arguing that such questions would confuse the jury and should be barred under Federal Rule of Evidence 403. [587]. Pfister argued that cross-examination of Gevas about the timeline of events was important to show the changes in Gevas' story over time and challenge his credibility. [590].

The Court heard argument on Gevas' motion *in limine* at the pretrial conference and took the motion under advisement to assess how the parties presented evidence. S*ee* [612] (Trial Tr. 7/8/2024) at 26:13-15, 27:23-28:2; *see also* [605]. At trial, Gevas was questioned by his own counsel about the contents of the letters at issue. [614] (Trial Tr. 7/102024) at 345:7-352:12. On cross examination, Gevas was questioned about his allegations against Pfister at various points in the case, including the initial two complaints which did not name Pfister, and subsequent amended complaints which named Pfister but did not mention the letters at issue. *Id.* at 413:8-422:25. Gevas was also questioned about his deposition, where he was

7

asked about his reasons for adding Pfister as a defendant and did not mention the letters. *Id.* at 431:22-440:7. Gevas was then asked about his discovery responses, including representations in December 2018 that he had completed review of documents in his possession. *Id.* 441:9-442:17. Gevas then testified that he did not produce the letters at issue until April 2024. *Id.* at 442:18-443:21. Gevas was also questioned about his familiarity with the prison mail system, and whether he could recall putting the letters into the mail. *Id.* at 458:13-462:13.

Based on the examination at trial, the Court did not err in allowing questions related to the timing of Gevas' production of the January and February 2016 letters. As the Court noted in its denial of Pfister's motion *in limine*, the parties' dispute over the letters was a question of credibility. *See* [539] at 2. In the context of Gevas' allegations against Pfister evolving as the case progressed, it was appropriate for Pfister to question the timing of Gevas providing the letters. The Court declines to award a new trial on this basis.

### iii. Testimony Regarding Gevas' Marriage

Gevas argues that it was error for the Court to prevent his counsel from pursuing questions related to Pfister's involvement in approving Gevas' marriage. [620] at 7-9. At trial, Pfister testified that he did not recognize Gevas or remember anything about him. [613] (Trial Tr. 7/9/2024) at 191:21-192:4. During Gevas' direct examination, his counsel asked him if Pfister had any involvement in approving his marriage. [614] (Trial Tr. 7/10/2024) at 341:25-342:1. Pfister's counsel objected on relevance grounds and the Court sustained the objection. *Id.* at 342:2-6. Gevas argues

8

that testimony about Pfister's involvement in approving his marriage would have shown that Pfister's claim that he did not remember Gevas was not credible. [620] at 8.

"For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citing *Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016)). "The personal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent." *Id.* Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

To prove his deliberate indifference claim, Gevas was required to show that Pfister was personally involved in depriving him of his Eight Amendment right to adequate health care. Whether or not Pfister was involved in approving Gevas' marriage is not of consequence to determining whether Pfister was personally involved in the alleged deprivation of Gevas' constitutional rights. The Court declines to award a new trial on this basis.

### iv. Second Court Order

Gevas argues that the Court erred by excluding a court order issued by Judge Lee. [620] at 9-10. Gevas also argues that the Court erred by granting Pfister's objection to Gevas referencing the order during his opening statement. *Id.*

9

At trial, during Gevas' opening statement, his counsel referenced that a federal judge had directed that certain orders be sent to Pfister. [612] (Trial Tr. 7/8/2024) at 59:23-25. Pfister's counsel objected on hearsay grounds, and the Court noted that it was inclined to sustain the objection, asked Gevas' counsel to move on, and stated that the issue could be discussed at a later time. *Id.* at 60:1-12. The Court later heard argument on the issue without the jury present. [613] (Trial Tr. 7/9/2024) at 81:3-94:7. Gevas sought to use as exhibits two separate docket entries from this case where Judge Lee directed the clerk to mail materials to Pfister. *Id.*; *see* [8], [23].

The first order denied a motion for leave to proceed in forma pauperis, and the Court "direct[ed] its Clerk to forward a copy of this order to Stateville Correctional Center Warden Randy Pfister, who should be able to ensure that Gevas' area of the prison is receiving adequate heat and who should be able to request that, while Gevas is confined at Stateville, he receives prescribed treatment as directed by his outside physicians." [8]. The second order ruled on multiple different motions and directed the Clerk "to send a copy of the motion 23 to Stateville Warden Randy Pfister, who should be able to ensure that Plaintiff is receiving adequate medical attention for his various conditions." [26].

Pfister argued that both orders should be barred under Federal Rule of Evidence 403 as not relevant and prejudicial. [613] (Trial Tr. 7/9/2024) at 84:8-85:4. The Court overruled the Rule 403 objection and admitted the first order, docket entry 8. *Id.* at 90:20-22. However, with regard to docket entry 26, the Court noted that the order only instructed that an underlying motion was to be mailed to Pfister, and that

they underlying motion concerned the temperature of the infirmary. *Id.* at 87:8-88:2. The Court concluded that it would review docket entry 26 further before ruling. *Id.* at 90:23-91:1. During Pfister's direct examination, Gevas published the first court order, docket entry 8, and questioned Pfister about it. *Id.* at 167:23-169:24. However, Gevas never attempted to enter the second court order into evidence. *See id.*

Even if the Court had excluded the second order, and had done so in error, it did not have an injurious effect on the jury's determination. Gevas was permitted to present evidence about the first court order and presented evidence of other documents that Pfister also testified he had never seen before. Similarly, the Court sustaining Pfister's objection during Gevas' opening statement did not have an injurious effect on the jury's determination because Gevas was ultimately permitted to present evidence to the jury about the first court order. The Court declines to award a new trial on this basis.

### v. Grievances

Gevas argues that the Court erred by excluding three grievances which were not stamped or signed by IDOC staff. [620] at 12-13. Gevas argues that the Court's evidentiary ruling at trial was contrary to its written ruling prior to trial. *Id.*

Pfister moved to exclude certain letters and grievances that it alleged were hearsay and had also been produced late. [541] at 2-5 (MIL #16). The Court granted in part and denied in part Pfister's MIL # 16. [566] at 2-3. The Court found that the grievances "do not contain descriptive statements to qualify for an exception under the hearsay rule" and that the grievances "are not business records under the Rule

11

803(6) hearsay exception." *Id.* at 3. The Court concluded that the grievances "are not admissible for their truth, but may be considered for non-hearsay purposes." *Id.*

At trial, Gevas moved to publish the disputed grievances, Pfister objected, and the Court discussed the dispute with counsel at sidebar. [614] (Trial Tr. 7/10/2024) at 357:5-15. At sidebar, the Court noted its pretrial ruling that the unsigned grievances were not business records and did not qualify for hearsay exceptions. *Id.* at 359:15-360:19. Gevas' counsel stated "it's okay. I don't have to show them." *Id.* at 360:6-7. Gevas' counsel did not assert that the unsigned grievances were being presented for non-hearsay purposes, therefore the Court's ruling at trial was consistent with its pretrial ruling.

Even if exclusion of the unsigned grievances were error, it did not result in a substantial or injurious effect on the jury's determination. The letters which the unsigned grievances were attached to were admitted and Gevas testified to their contents, therefore the jury heard similar evidence about Gevas' alleged attempts to contact Pfister at that time. *See* [614] (Trial Tr. 7/10/2024) at 345:7-349:3, 357:24-358:5. The Court declines to award a new trial on this basis.

### B. Jury Instructions

#### i. Duty to Provide Healthcare

Gevas argues that the Court erred by refusing his proposed jury instructions #17 and #18 which stated that prison officials have a duty to provide adequate healthcare. [620] at 11-12; *see* [533] at 19-21.

As an initial matter, the record does not reflect that Gevas objected to the Court's refusal of his proposed jury instructions #17 and #18. Those two proposed instructions correspond to first paragraph of the final instructions adopted by the Court describing the claim. *See* [600] at 19. During the Court's jury instructions conference, Gevas did not raise an objection to this section of the final jury instruction. *See* [615] (Trial Tr. 7/11/2024) at 651:17-663:1. Gevas therefore waived this objection. *See Schmitz v. Canadian P. Ry. Co.*, 454 F.3d 678, 683 (7th Cir. 2006) ("Rule 51 of the Federal Rules of Civil Procedure forecloses a party from claiming instructional error unless he properly objects to the giving or withholding of a requested instruction; proper objection under Rule 51 requires that specific grounds be asserted.").

Even if Gevas had properly objected to the instruction, he has not shown that he is entitled to a new trial. Gevas argues that the Court refused his proposed instruction and "instead set the standard as compliance 'with prescribed treatment' and 'how difficult it would have been for Defendant to provide treatment.'" [620] at 12. But the language regarding "prescribed treatment" and "difficulty" corresponds to the elements section of the jury instruction and was proposed by Gevas in his proposed instruction #19. *See* [533] at 23. Gevas also argues that it was improper for the Court to include language about reliance on the judgment of a medical professional. [620] at 12; [615] (Trial Tr. 7/11/2024) at 658:22-660:14 (objecting to

13

instruction). The language Gevas objects to is an optional instruction provided by the Seventh Circuit pattern jury instructions.[1]

In sum, Gevas asserts that the Court misstated the law by including language proposed by Gevas himself and language from the Seventh Circuit's pattern jury instructions, and by excluding the word "adequate." The only authority Gevas relies on is *Farmer v. Brennan*, which stands for the general rule that the Eighth Amendment requires prison officials to provide adequate food, clothing, shelter, and medical care to inmates. 511 U.S. 825, 831 (1994). The Court's final jury instructions accurately stated the law as to the elements Gevas needed to prove to succeed on his claim of deliberate indifference. Even if it was incorrect to exclude the word "adequate" to describe the medical care Gevas was entitled to, considering the instructions as a whole, with all the evidence and arguments presented in the case, shows that the jury was properly informed about the applicable law. *See Susan Wakeen*, 272 F.3d at 452.

### i. Mailbox Rule

Gevas also argues that the Court erred by refusing to give his proposed jury instruction regarding the "Mailbox Rule." [620] at 10-11. Gevas proposed during the jury instructions conference that the jury be instructed: "Where a communication is shown to have been properly sent, Illinois law presumes that it was received. And it's up to the defendants then to prove they didn't get it." [615] (Trial Tr. 7/11/2024) at 680:19-21. The Court heard argument on the instruction and refused it, noting that

---

[1] *See* https://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf at Instruction 7.17.

14

Gevas' cited authority applied to commercial disputes rather than prison mail and that the proposed instruction could cause confusion regarding the personal involvement element. *Id.* at 680:1-683:10.

The additional authority Gevas now provides does not show that he is entitled to a new trial. In *Taylor v. Brown*, the Seventh Circuit held that "a pro se prisoner's legal documents are considered filed on the date that they're tendered to prison staff in accordance with reasonable prison policies, regardless of whether they are ultimately mailed or uploaded." 787 F.3d 851, 859 (7th Cir. 2015). The "prison mailbox rule" as articulated by the Seventh Circuit applies to documents a prisoner files with a court and the date such documents are considered "filed," which is relevant to issues of timeliness. Gevas' proposed instruction attempts to extend this rule past the court filings context and apply to letters Gevas sent to the warden of the prison he was housed in. Gevas provides no authority to support such an extension of the prison mailbox rule. The Court's refusal of his proposed instruction was appropriate.

### C. Leave to Contact a Juror

Gevas' counsel requests leave to contact a juror for the purpose of better understanding how to try prisoner cases in the future. [609]. "Whether to allow the jury to be questioned after trial is within the discretion of the trial judge." *Delvaux v. Ford Motor Co.*, 764 F.2d 469, 471 (7th Cir. 1985). Allegations of improper contact with the jury during may trial may warrant allowing questioning of jurors after the trial, but there are no such allegations here. *See id.* at 471-72; *Bd. of Trustees, Village*

15

*of Bolingbrook Police Pension Fund v. 909 Corp.*, 33 F.3d 56 (7th Cir. 1994). Counsel's only rationale for the request is to better understand the verdict and use that insight to improve at trying future cases. [609]. Given the length of time that has passed since the July 2024 trial and the strong likelihood that such contact would not be welcomed by the jurors, counsel's request is denied. *See Bd. of Trustees*, 33 F.3d at 56.

### IV. Conclusion

For the stated reasons, Plaintiff's motion to vacate judgment and for a new trial [620] is denied. Plaintiff's motion for leave to contact a juror [609] is also denied.

E N T E R:

Dated: March 19, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

16